**Thieu Quang BUI, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–97–00032–CR.**

Court of Appeals of Texas, Texarkana.

Submitted Jan. 30, 1998.

Decided Feb. 25, 1998.

Rehearing Overruled April 28, 1998.

James Gregory Glass, Herb H. Ritchie, Houston, for appellant.

Barbara Anne Drumheller, Assistant District Attorney, for appellee.

Before CORNELIUS, C.J., and GRANT and ROSS, JJ.

## OPINION

CORNELIUS, Chief Justice.

Thieu Quang Bui was charged with the felony offense of burglary of a habitation. The indictment alleged the use of a deadly weapon. Bui pleaded not guilty, and the case was tried before a jury. The jury found Bui guilty, made an affirmative finding that a deadly weapon was used, and set Bui's punishment at five years' imprisonment and a fine of $10,000.00.

Bui's family immigrated from South Vietnam, settled in Corpus Christi, and eventually moved to San Antonio. While attending school at the University of Texas in Austin, Bui became attracted to the complainant. He became obsessed with her and fantasized about her and the extent of their relationship. He intercepted her e-mail, and found out that she had a job for summer employ-

ment with Dow Chemical. He ·used this knowledge to meet with her and make business-related social engagements. After securing her trust, Bui told the complainant that he had previously been in a car accident in LaPorte, the city where she resided, and needed to see two doctors there for follow-up appointments. Using this pretext, Bui asked the complainant if he could spend the night at her apartment, and she agreed.

Bui spent the night on the complainant's couch, arose early the next morning, took her apartment keys, copied them, and then returned before she awoke. This was part of Bui's scheme whereby Bui planned to re-enter her apartment at a later date, knock her unconscious, take pictures of her in the nude, and fondle her. On January 30, 1996, Bui went back to the complainant's apartment with a ski mask, a ratchet, and a disposable camera. Once in the apartment, he decided that the ratchet was too small to use as a weapon, so he picked up a Duraflame log that was sitting in the fireplace. While Bui waited for the complainant to arrive, he passed about an hour reading the complainant's diary and looking through her things. When he heard the complainant's car pull up outside, he hid in the bathroom. The complainant entered her apartment and went to her bedroom, where she changed into a pair of shorts. She went into the bathroom and saw a figure standing in front of her wearing a ski mask. She then realized she was in danger, so she tried to immobilize Bui, but she failed. At this point she ran toward her door, but Bui caught up to her and began beating her about the head with the log. He tried to knock her unconscious by hitting her very hard ten to fifteen times. The complainant screamed that Bui was killing her and that she was dead. She testified that she felt she was going to die. Bui continued to hit her until the log broke. Bui was unable to render the complainant unconscious, so he abandoned his efforts and fled. The complainant suffered a broken nose, two black eyes, severe bruising on the back of her head, pain in her neck and back, rug burns, scrapes, and cuts on her legs.

Later in the year, Bui was interviewed by the University of Texas Police Department in

Austin because he had been using the complainant's e-mail password to send sexually explicit messages to other students. The police knew of the complainant's attack and questioned Bui about it. Thereafter, Bui gave two written confessions outlining what he had done, except that he did not admit that he planned to wait for the complainant to come home or to take pictures of her. He did not admit this plan until he was cross-examined during the trial.

On appeal, Bui raises eight points. In general, these points contend that the court erred in failing to give certain lesser offense charges, that the evidence is legally and factually insufficient to support the conviction and the finding that the Duraflame log was a deadly weapon, that the court erred in allowing officers to opine that the log was a deadly weapon, that the court allowed improper jury argument, and that the jury charge was improper. We overrule these contentions and affirm the judgment.

■ In Bui's first point of error, he argues that the trial court erred in refusing to instruct the jury on the lesser included offenses of misdemeanor assault and criminal trespass. In a trial before a jury, a defendant is entitled to a jury instruction on a lesser included offense when (1) the lesser included offense is included within the proof necessary to establish the offense charged, and (2) some evidence exists that if the defendant is guilty, he is guilty only of the lesser offense. *Penry v. State,* 903 S.W.2d 715, 755 (Tex.Crim.App.1995); *Rousseau v. State,* 855 S.W.2d 666 (Tex.Crim.App.1993).

■ Criminal trespass and assault are within the proof necessary to prove burglary and aggravated assault, respectively. *See Aguilar v. State,* 682 S.W.2d 556, 558 (Tex. Crim.App.1985); *Roberson v. State,* 549 S.W.2d 749, 751 (Tex.Crim.App.1977); *Day v. State,* 532 S.W.2d 302, 306 (Tex.Crim.App. 1975); *Bennett v. State,* 79 Tex.Crim.App.

380, 185 S.W. 14, 15 (1916); *Phillips v. State,* 790 S.W.2d 664, 668 (Tex.App.—Tyler 1988, no pet.); *Hillburn v. State,* 627 S.W.2d 546 (Tex.App.—Amarillo 1982, no pet.). The determination of whether these offenses are lesser included offenses of burglary of a habitation must be made on a case-by-case basis, because lesser included offenses are defined in terms of the facts of the case as well as the terms of the offense. *Bohnet v. State,* 938 S.W.2d 532 (Tex.App.—Austin 1997, pet. ref'd). If evidence from any source raises the issue of a lesser included offense, a charge on that offense must be included in the court's charge. *Penry v. State,* 903 S.W.2d at 755; *Saunders v. State,* 840 S.W.2d 390, 391 (Tex.Crim.App.1992). Here, the State was required to prove that Bui committed burglary of a habitation as alleged in the indictment, which means he must have entered the apartment with the intent to commit a felony or that he did commit or attempt to commit a felony while in the complainant's home without her consent. TEX. PENAL CODE ANN. § 30.02(a)(1),(3) (Vernon 1994).[1] The State alleged that Bui had the intent to and attempted to commit aggravated assault while in the complainant's home. If testimony raised the issue that Bui entered the premises for purposes other than to commit an aggravated assault, he would be entitled to a charge on the lesser offense of criminal trespass. *See Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim.App.1985). Bui argues that there is evidence that he committed and intended to commit only simple assault, a misdemeanor, and not aggravated assault. The difference between a simple assault and an aggravated assault is that a person must cause serious bodily injury to another or use or exhibit a deadly weapon during the commission of the assault for it to be an aggravated assault. *See* TEX. PENAL CODE ANN. § 22.02 (Vernon 1994).

■ We must consider all the evidence introduced at trial, whether produced by the

---

1. TEX. PENAL CODE ANN. § 30.02(a) (Vernon 1994) states:

A person commits an offense if, without the effective consent of the owner, he:

(1) enters a habitation, or a building ... not then open to the public, with the intent to commit a felony or theft; or

(2) remains concealed, with intent to commit a felony or theft, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony or theft.

State or Bui. *Penry v. State*, 903 S.W.2d at 755. Additionally, the credibility of the evidence and whether it conflicts with other evidence or is controverted may not be considered in determining whether an instruction on a lesser included offense should be given. *Penry v. State*, 903 S.W.2d at 755; *Saunders v. State*, 840 S.W.2d at 391. There are two ways in which the evidence may raise the issue of a lesser included offense. *Thomas v. State*, 919 S.W.2d 810, 812 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd). First, there may be evidence which refutes or negates evidence of the greater offense. *Saunders v. State*, 840 S.W.2d at 391. Second, there may be evidence subject to different interpretations implicating the lesser included offense. *Id.* at 392. Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge. *Bignall v. State*, 887 S.W.2d 21 (Tex.Crim.App.1994). A defendant's own testimony, though contradicted, is sufficient to require an instruction on a lesser included offense. *Hunter v. State*, 647 S.W.2d 657 (Tex.Crim.App.1983). A jury has the exclusive right to determine the appellant's intent at the time of the offense. *Jones v. State*, 900 S.W.2d 103, 106 (Tex.App.—Houston [14th Dist.] 1995, no pet.); *Evans v. State*, 781 S.W.2d 376, 379 (Tex.App.—Houston [14th Dist.] 1989, pet. ref'd).

■ The second prong of the test requires an examination of the record to see whether it presents an alternative factual scenario which, if believed, would support a finding of the lesser offense. *McElhaney v. State*, 899 S.W.2d 15, 18 (Tex.App.—Tyler 1995, pet. ref'd, untimely filed). The uncontradicted evidence in this case is that Bui intended when he entered her apartment to hit the complainant in the head and knock her unconscious. Further, the uncontradicted evidence is that he hit her on the head ten to fifteen times, until the Duraflame log broke to pieces. There is no evidence in the record that the Duraflame log was not a deadly weapon by the manner and means of its intended use. Thus, the record does not contain any evidence that, if Bui was guilty, he was guilty only of simple assault and, therefore, criminal trespass. The trial court did not err in refusing Bui's requested in-struction on simple assault. Further, since there was no evidence of a simple assault, the trial court did not err in refusing Bui's instruction on criminal trespass.

■ In Bui's second and third points of error, he alleges that the evidence is legally and factually insufficient to support his conviction. In his fourth point of error, he contends that there is insufficient evidence in the record to support the finding that he used and exhibited a deadly weapon during the commission of the offense. When an appellant challenges both the legal and factual sufficiency of the evidence, we first determine whether evidence adduced at the trial is legally sufficient to support the verdict. *Clewis v. State*, 922 S.W.2d 126, 135 (Tex.Crim.App.1996); *Gaffney v. State*, 937 S.W.2d 540, 541 (Tex.App.—Texarkana 1996, pet. ref'd). The standard for reviewing the legal sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Royal v. State*, 944 S.W.2d 33, 35 (Tex.App.—Texarkana 1997, pet. ref'd); *Gaffney v. State*, 937 S.W.2d at 541. If there is any evidence that could establish guilt beyond a reasonable doubt, the conviction will not be reversed. *Anderson v. State*, 871 S.W.2d 900, 902 (Tex. App.—Houston [1st Dist.] 1994, no pet.). Finally, we position ourselves as a final due process safeguard, ensuring only the rationality of the fact finder. *Gaffney v. State*, 937 S.W.2d at 541.

■ In conducting a factual sufficiency review, we review the fact finder's weighing of the evidence in an appropriately deferential way to avoid substituting our judgment for that of the fact finder. *Id.; Clewis v. State*, 922 S.W.2d at 135. We view all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d at 135. We may not reweigh the evidence and set aside the jury

verdict merely because we feel that a different result is more reasonable. *Id.* Additionally, when there is conflicting evidence, the fact finder's verdict on such matters is generally regarded as conclusive. *Taylor v. State,* 921 S.W.2d 740, 746 (Tex.App.—El Paso 1996, no pet.). If we find the evidence factually insufficient, we reverse and remand the cause for a new trial. *Gaffney v. State,* 937 S.W.2d at 541.

Burglary of a habitation is defined in part as entering a habitation with the intent to commit a felony or entering a habitation and committing or attempting to commit a felony. TEX. PENAL CODE ANN. § 30.02(a) (Vernon 1994). Aggravated assault is an act where a person intentionally, knowingly, or recklessly causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of an assault. TEX. PENAL CODE ANN. § 22.02. An assault is an act where a person intentionally, knowingly, or recklessly causes bodily injury to another or threatens another with imminent bodily injury. TEX. PENAL CODE ANN. § 22.01 (Vernon 1994).

Bui argues that there is insufficient evidence to prove that he caused serious bodily injury to the complainant. He points out that the complainant never lost consciousness, sustained no life threatening injuries, and suffered no serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. He further argues that there is insufficient evidence that the Duraflame log satisfies the legal definition of a deadly weapon.[2] Thus, Bui argues that he is guilty only of simple assault and criminal trespass, and not burglary of a habitation.

█ When Bui entered the complainant's apartment, he planned to knock her unconscious. To accomplish that, Bui picked up a Duraflame log and struck the complainant's head ten to fifteen times. It is not necessary that Bui caused serious bodily injury, only that he attempted to do so. Courts have held that a blow to the head hard enough to cause a victim to lose consciousness is sufficient for a jury to find that there was a serious bodily injury. *See Richardson v. State,* 753 S.W.2d 759 (Tex.App.—Dallas 1988, no pet.); *Spearman v. State,* 694 S.W.2d 216, 218 (Tex.App.—Houston [1st Dist.] 1985, no pet.); *Harrison v. State,* 686 S.W.2d 220 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd). This is exactly what Bui attempted. We hold that the evidence is sufficient, under both legal and factual sufficiency reviews, for the jury to find that Bui entered the complainant's apartment and attempted aggravated assault.

Bui also contends that there is insufficient evidence to support the jury's finding that the Duraflame log was a deadly weapon. A deadly weapon can be anything that in the manner of its use is capable of causing death or serious bodily injury. TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 1994); *Brooks v. State,* 900 S.W.2d 468, 472 (Tex.App.—Texarkana 1995, no pet.). Serious bodily injury is bodily injury that creates a substantial risk of death or that causes serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. TEX. PENAL CODE ANN. § 1.07(a)(46) (Vernon 1994).

█ A Duraflame log is not a deadly weapon per se, but it can become one if, in the manner of its use, it is capable of causing death or serious bodily injury. *See cf. Brooks v. State,* 900 S.W.2d at 472; *Bethel v. State,* 842 S.W.2d 804, 807 (Tex.App.—Houston [1st. Dist.] 1992, no pet.). Since the Duraflame log is not a deadly weapon per se, the State must have shown that the Duraflame log was capable of causing death or serious bodily injury in the manner of its use by Bui. *Brooks v. State,* 900 S.W.2d at 472. It is not necessary to show that the Duraflame log actually did cause serious bodily injury. *See id.; Clark v. State,* 886 S.W.2d 844, 845 (Tex.App.—Eastland 1994, no pet.).

---

2. TEX. PENAL CODE ANN. § 1.07(a)(17) (Vernon 1994) states:
 "Deadly weapon" means:
 (A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

 (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

Further, the State did not need to prove that Bui *intended* to use the Duraflame log in such a manner, if it proved that he *did* use the log in a manner that could cause death or serious bodily injury. *In re K.W.G.*, 953 S.W.2d 483, 488 (Tex.App.—Texarkana 1997, no pet. h.); *Charles v. State*, 915 S.W.2d 238, 240 (Tex.App.—Beaumont 1996, pet. ref'd); *Brooks v. State*, 900 S.W.2d at 472; *Clark v. State*, 886 S.W.2d at 845; *Roberts v. State*, 766 S.W.2d 578, 579 (Tex.App.—Austin 1989, no pet.).

The following objects have been found to be deadly weapons by the manner of their use: a club, a board, a knife, a hammer, a pipe, a fist, fire, a hand, a foot, a Coke bottle, a leg of a bar stool, and an ax handle. *See Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim.App.1987); *Blain v. State*, 647 S.W.2d 293, 294 (Tex.Crim.App.1983); *In re K.W.G.*, 953 S.W.2d at 485,*Powell v. State*, 939 S.W.2d 713, 718–19 (Tex.App.—El Paso 1997, no pet.); *Brooks v. State*, 900 S.W.2d at 472; *McElhaney v. State*, 899 S.W.2d at 17; *Jackson v. State*, 865 S.W.2d 259, 260–61 (Tex. App.—Eastland 1993, no pet.); *Taylor v. State*, 859 S.W.2d 466, 467 (Tex.App.—Dallas 1993, no pet.); *Bethel v. State*, 842 S.W.2d at 807; *Enriquez v. State*, 826 S.W.2d 191, 193 (Tex.App.—El Paso 1992, no pet.); *Kirkpatrick v. State*, 747 S.W.2d 521, 524 (Tex. App.—Fort Worth 1988, pet. ref'd); *Granger v. State*, 722 S.W.2d 175, 176 (Tex.App.—Beaumont 1986, pet. ref'd); *Lewis v. State*, 638 S.W.2d 148, 151 (Tex.App.—El Paso 1982, pet. ref'd).

▄▄▄ The jury may consider all the facts in determining whether a weapon is deadly, including the words of the accused, the intended use of the weapon, the size and shape of the weapon, the testimony of the victim that she feared for her life, the severity of wounds inflicted, and testimony as to the weapon's potential for deadliness. *See Denham v. State*, 574 S.W.2d 129, 130 (Tex. Crim.App.1978); *McElhaney v. State*, 899 S.W.2d at 17; *Bethel v. State*, 842 S.W.2d at 807. The jury heard descriptions of and saw the remaining pieces of the Duraflame log. It heard testimony from police officers that the Duraflame log could be a deadly weapon in the manner that Bui used it. Further,

both the complainant and Bui testified that the complainant screamed out that she was dying and was dead as Bui struck her with the Duraflame log. Finally, during the cross-examination of Bui the following transpired:

> Q. . . . Don't you think if you picked up this log and hit somebody repeatedly over the head until they fall on the ground and keep hitting them until this log right here—until that log breaks in half, don't you think you should have known that might cause somebody serious bodily injury?
>
> . . . .
>
> A. Yes, I would think that would cause serious injury.

This is sufficient evidence to support the jury's finding that the Duraflame log was a deadly weapon because of the manner in which it was used. *See cf. Harrison v. State*, 686 S.W.2d 220, 221 (Tex.App.—Houston [1st Dist.] 1984, pet. ref'd).

Bui also raises the point that the indictment only alleged that a "log" was the deadly weapon, whereas the evidence at trial showed that a Duraflame log was the weapon. Bui argues that since the indictment was the only notice he had that the fact finder would be called upon to make an affirmative finding of a deadly weapon, he did not have notice that he had to defend against an allegation that a Duraflame log was used and not a "log" as stated in the indictment.

▄▄▄ Tex.Code Crim. Proc. Ann. art. 1.14(b) (Vernon Supp.1998) provides that a defect of form or substance is waived if no objection is made before the date that trial commences. *State v. Murk*, 815 S.W.2d 556, 557 (Tex.Crim.App.1991); *Studer v. State*, 799 S.W.2d 263 (Tex.Crim.App.1990). Defects going to notice are defects of form. *State v. Murk*, 815 S.W.2d at 557; *Studer v. State*, 799 S.W.2d at 267 n. 5. The reasoning behind Article 1.14(b) is that a defendant should have notice of the charge against him, but a conviction should not be reversed simply because the charging instrument may have a technical error that the defendant never raised to the trial court. *Duron v.*

*State,* 956 S.W.2d 547 (Tex.Crim.App.1997). Bui has waived error on this point, if any, by not objecting to it before trial. *See generally, McCoy v. State,* 877 S.W.2d 844 (Tex. App.-Eastland 1994, no pet.).

Additionally, a "log" does not necessarily mean a log of wood. In common parlance, a "log" may denote any bulky, heavy object shaped roughly like a tree log. Moreover, the object used here was named "Duraflame log."

In Bui's fifth point, he complains of the trial court's allowing law enforcement officers to give their opinions that the Duraflame log constituted a deadly weapon. Three police officers testified that the Duraflame log could be a deadly weapon. The three officers had twelve, thirteen, and seventeen years of experience, respectively, as officers, and they testified that, due to the weight and size of the log, it was their professional opinion that a Duraflame log could be used in a manner capable of causing serious bodily injury or death.

 Whether a witness who is offered as an expert possesses the required qualifications is a question which rests largely in the trial court's discretion, and the decision to admit or exclude the testimony will not be disturbed absent a clear abuse of discretion. *Alvarado v. State,* 912 S.W.2d 199, 215 (Tex. Crim.App.1995); *Banda v. State,* 890 S.W.2d 42, 58–59 (Tex.Crim.App.1994); *Kelly v. State,* 824 S.W.2d 568 (Tex.Crim.App.1992); *Moore v. State,* 836 S.W.2d 255, 258–59 (Tex. App.-Texarkana 1992, pet. ref'd). There is a three-prong test for the admissibility of expert testimony. *Alvarado v. State,* 912 S.W.2d at 215. First, the expert must be qualified by knowledge, skill, expertise, training, or education. *Id.; Negrini v. State,* 853 S.W.2d 128, 130 (Tex.App.—Corpus Christi 1993, no pet.). Second, the subject matter of the testimony must be an appropriate one for expert testimony. *Alvarado v. State,* 912 S.W.2d at 215. Third, the expert's testimony must assist the trier of fact to understand the evidence or decide a fact. *Id.*

 This requirement that the expert have knowledge or experience pertaining to a relevant issue must only exceed that of an average juror. *Zinger v. State,* 899 S.W.2d 423, 431 (Tex.App.-Austin 1995), *rev'd on other grounds,* 932 S.W.2d 511 (Tex.Crim.App. 1996). There is no rigid formula for determining whether a particular witness is qualified to testify as a expert. *Matson v. State,* 819 S.W.2d 839, 851 (Tex.Crim.App.1991); *Mouton v. State,* 892 S.W.2d 234, 236 (Tex. App.-Beaumont 1995, pet. ref'd).

 The State argues that Bui has waived his error by not questioning the officers on voir dire and proving their incompetency. We disagree. To require the party challenging the witness to question the witness on voir dire and prove his incompetency would reverse the burden of proving the witness's qualifications. The initial burden is on the party offering the witness to prove his qualifications. *Matson v. State,* 819 S.W.2d at 851. If the challenging party objects to the witness's qualifications with a timely and specific objection, he has not waived his objection even if he does not take the witness on voir dire.

 Bui did not question the officers on voir dire, and thus he did not produce any further evidence that would attack the officer's qualifications. The only question is whether the trial court abused its discretion in ruling that the State carried its initial burden to prove the officers were qualified to give testimony on this subject. The officers testified that they had twelve, thirteen, and seventeen years of experience, respectively, as police officers. They testified that after seeing and touching the Duraflame log and considering the weight of the log, it was their opinion that it could cause death or serious bodily injury if used to beat another human being several times about the head. We hold that the State produced sufficient evidence in support of the officers' qualifications, so the trial court did not clearly abuse its discretion in overruling Bui's objections. *See cf. Calderon v. State,* 950 S.W.2d 121, 128 (Tex. App.—El Paso 1997, no pet. h.); *Sabedra v. State,* 838 S.W.2d 761, 763 (Tex.App.—Corpus Christi 1992, pet. ref'd); *Williams v. State,* 826 S.W.2d 783, 785 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd).

The second prong of this test requires that for a witness to testify as an expert, the subject matter of the testimony is an appropriate one for expert testimony. *Alvarado v. State*, 912 S.W.2d at 215. Police officers have often been called as expert witnesses to testify about the deadliness of a weapon. *See, e.g., Hatchett v. State*, 930 S.W.2d 844, 848 (Tex.App.—Houston [14th Dist.] 1996, pet. ref'd); *Fortenberry v. State*, 889 S.W.2d 634, 637 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd); *Hughes v. State*, 787 S.W.2d 193, 195 (Tex.App.—Corpus Christi 1990, pet. ref'd); *Swartz v. State*, 685 S.W.2d 492, 493 (Tex.App.—Fort Worth 1985, pet. ref'd). Although expert testimony is not required before a jury can find that a weapon is deadly by the manner of its use, it can be helpful, and it is appropriate for the jury to hear such expert testimony. *See generally, Bethel v. State*, 842 S.W.2d at 807.

The third prong of this test requires that the testimony must actually assist the fact finder in deciding the case. *Alvarado v. State*, 912 S.W.2d at 216. The jury had to determine whether Bui used a deadly weapon in the commission of the charged offense. Testimony from experts on whether the Duraflame log could be a deadly weapon in the manner of its use would assist the fact finder in deciding this issue. Thus, the third prong is met. We conclude that the court properly allowed the officers' testimony.

Bui also contends that the trial court erred in failing to grant his motion for mistrial during the punishment phase because the prosecutor injected unsworn testimony of his personal knowledge and opinion of Bui's dangerousness. During the punishment phase of the trial, the following occurred:

[PROSECUTOR:] ... I think that although it's hard to tell from him sitting here today and hearing all the wonderful things about it, I think he is a dangerous person. Here's why I think that.

I have been straight with you so far. And I'm going to continue to be straight. I don't think he is intentionally dangerous. I don't. But I think he is dangerous.

[DEFENSE COUNSEL:] Objection to improper opinion.

THE COURT: Sustained.

[DEFENSE COUNSEL:] Ask the jury to disregard.

[PROSECUTOR:] The evidence will show that he is dangerous for these reasons -

[DEFENSE COUNSEL:] Judge, I would ask for a mistrial.

[THE COURT:] Overruled.

[PROSECUTOR:] He could have accidentally killed that person. The evidence doesn't show he intentionally wanted to kill her, but that's how people get killed. And what about this when you go from there and knock a woman out and take her clothes off and start taking photographs of her, even if he didn't intend to rape her, might not that thought have crossed his mind when she is laying there naked and having these fantasies and taking these pictures? ....

An improper jury argument constitutes reversible error only if, "in the light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused, into the trial." *Felder v. State*, 848 S.W.2d 85, 95 (Tex.Crim.App. 1992); *Castillo v. State*, 939 S.W.2d 754, 761 (Tex.App.—Houston [14th Dist.] 1997, pet. ref'd). Generally, a prosecutor may not give his personal opinion on an issue in the case, because the jurors may infer that the prosecutor's opinion was based on outside information not available to the jury. *Wyatt v. State*, 566 S.W.2d 597 (Tex.Crim.App. [Panel Op.] 1978). A prosecutor may, however, argue his opinion concerning issues in the case so long as the opinion is based on the evidence in the record and does not constitute unsworn testimony. *Penry v. State*, 903 S.W.2d at 756. Here, the prosecutor stated his opinion that Bui was dangerous, but a fair reading of the record shows that his opinion was based on the evidence. Indeed, after the court overruled Bui's motion for mistrial, the prosecutor went directly into a discussion of the evidence in the record that corroborated his opinion that Bui was dangerous. No error is shown.

Bui also complains of the prosecutor's argument stating that Bui had been stalking

the complainant. The prosecutor made the following argument, "And you send a message to [the complainant] and let her know there is justice and [the complainant] doesn't have to tolerate that, doesn't have to put up with this, doesn't have to live in fear of this man who has been stalking her since December of 1996." Bui claims that this argument was a reference to an inadmissible extraneous criminal act and should require reversal.

■ A fair reading of the record reveals that the State used the term stalking in its common, everyday usage and not as a label for an extraneous criminal offense. As previously stated, the State may sum up the evidence and make reasonable deductions from the evidence. *Coble v. State*, 871 S.W.2d 192, 204 (Tex.Crim.App.1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex.Crim.App.1973); *Norrid v. State*, 925 S.W.2d 342, 350 (Tex. App.—Fort Worth 1996, no pet.). The evidence in this case showed that Bui noticed the complainant in the halls of their school, he watched as she turned in a paper so he could learn her name, and he hacked at the computer to learn her e-mail password. With the password, Bui broke in and read some of the complainant's e-mail, which informed him that she would be going to work for Dow. Bui then called her home, impersonated someone from Dow, and gave her his own name and number as someone to contact for professional reasons. Through this contact Bui met with the complainant several times on a purely business level. Next, Bui testified that he arranged to spend the night at her apartment and duplicated her key while she slept. Finally, Bui later took a camera to her apartment and broke in wearing a ski mask, hoping to knock her unconscious and take pictures of her naked body as well as fondle her. Given these facts, supplied by Bui himself, the State's argument that he had been stalking the complainant represented a reasonable deduction from the evidence, as well as a proper summation of the testimony.

Finally, Bui contends that the trial court's jury instructions at the guilt/innocence phase caused him egregious harm because it permitted the jury to make a finding of guilt on a theory other than that alleged in the indictment and set out in the application paragraph of the instructions. Bui was charged in the indictment with intentionally and knowingly entering the complainant's habitation and committing and attempting to commit the felony of aggravated assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(3). In the introductory paragraph of the jury instructions, the jury was told that Bui was charged with the offense of burglary of a habitation with *intent to commit* aggravated assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1). Also, the verdict form required the jury to convict Bui if they found him guilty of burglary of a habitation with intent to commit aggravated assault.

■ The question is whether the trial court erred in instructing the jury in the opening paragraph that Bui was charged in the indictment with the offense of burglary of a habitation *with the intent to commit aggravated assault*, when he was actually charged in the indictment with intentionally entering the complainant's habitation and *committing or attempting to commit an aggravated assault*. Another question is whether the trial court erred by giving the jury a verdict form that had the jury find Bui guilty of burglary of a habitation with the intent to commit aggravated assault. We hold that this was error. The indictment alleged that Bui committed burglary of a habitation under TEX. PENAL CODE ANN. § 30.02(a)(3),[3] but the introductory paragraph of the charge and the verdict form alleged burglary of a habitation under TEX. PENAL CODE ANN. § 30.02(a)(1).[4] Although this variance was error, our analysis does not end with that determination. We must determine if the error was harmful enough to require reversal.

---

**3.** TEX. PENAL CODE ANN. § 30.02(a)(3) provides: "A person commits an offense if, without the effective consent of the owner, he ... enters a building or habitation and commits or attempts to commit a felony or theft."

**4.** TEX. PENAL CODE ANN. § 30.02(a)(1) provides: "A person commits an offense if, without the effective consent of the owner, he ... enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony or theft...."

The standard of review for alleged error in the jury charge depends on whether the defendant properly objected to the error during the trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g); *Gornick v. State*, 947 S.W.2d 678, 680 (Tex.App.—Texarkana 1997, no pet.). If a proper objection was raised, reversal is required if the error is "calculated to injure the rights of the defendant." *Almanza v. State*, 686 S.W.2d at 171. If a defendant does not object to the charge, reversal is required only if the harm is so egregious that the defendant has not had a fair and impartial trial. *Rudd v. State*, 921 S.W.2d 370, 373 (Tex.App.—Texarkana 1996, pet. ref'd).

Bui concedes that he did not preserve his complaint as to this error, and we may only reverse his conviction if he proves that the alleged error caused him egregious harm. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App.1994); *Peterson v. State*, 942 S.W.2d 206, 208 (Tex.App.—Texarkana 1997, pet. ref'd). Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim.App.1991); *Hall v. State*, 937 S.W.2d 580, 583 (Tex.App.—Texarkana 1996, pet. ref'd). In conducting the harm analysis, we should consider four factors: (1) the charge itself; (2) the state of the evidence, including contested issues and the weight of the probative evidence; (3) arguments of counsel; and (4) any other relevant information revealed by the record of the trial as a whole. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex.Crim.App. 1996); *Bailey v. State*, 867 S.W.2d 42, 43 (Tex.Crim.App.1993); *Rudd v. State*, 921 S.W.2d at 373. The purpose is to eliminate the actual and not just the theoretical harm to the accused. *Rudd v. State*, 921 S.W.2d at 373.

We first look at the charge itself. The introductory paragraph of the charge and the verdict form were at variance with the indictment, but the abstract explanation of the law and the application paragraph were correct. The portion of the charge that applies the law to the facts of the case determines if the charge is fundamentally defective. *Hudson v. State*, 675 S.W.2d 507, 512 (Tex.Crim.App.1984); *Lewis v. State*, 656 S.W.2d 472, 474 (Tex.Crim.App.1983). A charge will not be found to be fundamentally defective for improper or omitted definitions in the abstract portions of the charge. *Hudson v. State*, 675 S.W.2d at 512; *Lewis v. State*, 656 S.W.2d at 474. In this case, the application paragraph correctly applied the law to the facts, instructed the jury on every element of the offense, and informed the jury on the correct burden of proof.

The second factor requires us to look at the state of the evidence, which includes a determination of whether the jury charge error related to a contested issue and the weight of the probative evidence. Whether Bui was guilty of burglary of a habitation was a contested issue. However, as stated before, there was more than sufficient evidence to support the jury's findings.

The third factor is whether the parties addressed this issue in their jury arguments. The prosecutor correctly explained the law and what the jury had to find to convict Bui. Further, he never raised the issue of whether Bui could be convicted for burglary of a habitation with the intent to commit aggravated assault. He only addressed the correct application of the law to the facts.

After reviewing the charge in light of the foregoing analysis, we hold that the error in the charge did not cause egregious harm to Bui and that Bui received a fair trial. *See cf. Bonfanti v. State*, 686 S.W.2d 149 (Tex.Crim. App.1985); *Mattox v. State*, 874 S.W.2d 929, 935 (Tex.App.—Houston [1st Dist.] 1994, no pet.).

For the reasons stated, the judgment is affirmed.