NO. 07-03-0091-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



MARCH 31, 2004



______________________________




JON P. LESTER, APPELLANT



v.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 140TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2000-434752; HON.JIM BOB DARNELL, PRESIDING



_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1)

ON MOTION FOR REHEARING

 As our February 11, 2004 opinion reveals, appellant was convicted of aggravated
assault with a deadly weapon on two counts. The first of these counts was that he had
used a knife in a manner capable of causing death or serious bodily injury and the second
was that he had used a telephone in a manner capable of causing death or serious bodily
injury. In his appeal, appellant limited his challenge to the conviction on the second count
and argued that the evidence was factually insufficient to support the conviction on that
count and the judgment should be modified to delete that conviction. Because he did not
challenge his conviction on the first count, and because, with the two prior convictions
found by the jury, that conviction was sufficient to support the 25 year penal sentence
assessed, we affirmed the conviction.

 In his motion for rehearing, appellant again does not challenge his conviction on the
first count. Rather, in his well presented motion, he argues we erred in not considering his
argument relating to the second count because he "was entitled to attack the sufficiency
of the evidence to support one of the verdicts and to have the judgment properly reflect the
status of the evidence."

 In advancing his contention, and without the citation of direct case authority,
appellant primarily relies upon the admonition in the Rules of Appellate Procedure that a
court of appeals "must hand down a written opinion that is as brief as practicable but that
addresses every issue raised and necessary to the final disposition of the appeal." See
Tex. R. App. P. 47.1 By failing to address his argument relating to the second count
conviction, appellant reasons that a reformation of the judgment to reflect one count of
aggravated assault, with a deadly weapon finding, and one count of assault by causing
bodily injury, a misdemeanor, "could have a real, though intangible, impact on Appellant's
ability to obtain parole once he becomes eligible." Thus, he concludes, he "is entitled to
obtain every legal advantage in doing so, even if the advantage is sought during direct
appeal." By failing to discuss this question, he reasons, we have, in effect, said his brief
was a frivolous one. 

 We remain convinced that the conclusion we reached in our original opinion was
correct because the issue we addressed effected "the final disposition of the appeal." 
However, in the interest of justice, we will consider appellant's argument.

 The standards by which we determine legal and factual insufficiency challenges are
by now so well established as to be axiomatic. The standard for measuring the legal
sufficiency of the evidence is whether, after viewing all the evidence in a light most
favorable to the prosecution, any rational trier of fact would have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Johnson v. State, 871 S.W.2d 183, 186 (Tex.
Crim. App.1993), cert. denied, 511 U.S. 1046, 114 S.Ct.1579, 128 L.Ed.2d 222 (1994).

 In reviewing the factual sufficiency of the evidence, we view all of it neutrally, and
reversal is only required if the evidence of guilt is so obviously weak as to undermine
confidence in the jury's determination or the proof of guilt is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Further, in
conducting that review, we must give appropriate deference to the jury's findings so as not
to substitute our judgment for that of the jury. King v. State, 29 S.W.3d 556, 563 (Tex.
Crim. App. 2000); Clewis v. State, 922 S.W.2d 126, 129, 135 (Tex. Crim. App.1996); 
Barnum v. State, 97 S.W.3d 373, 378-79 (Tex. App.-Amarillo 2003, pet. ref'd).

 The Penal Code defines deadly weapon as "a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious bodily injury," or
"anything that in the manner of its use or intended use is capable of causing death or
serious bodily injury." Tex. Pen. Code Ann. §1.07(a)(17)(A) & (B) (Vernon Supp. 2004).
In this case, the telephone was not a deadly weapon per se. See Hill v. State, 913 S.W.2d
581, 582-83 (Tex. Crim. App.1996) (explaining characterization of deadly weapons per se). 
Obviously, it was not manifestly made, designed, or adapted for the purpose of causing
death or serious bodily injury. That being so, it was the State's burden to prove that
appellant intended to use the telephone in a manner that was capable of causing death or
serious bodily injury.

 In determining whether an item was used as a deadly weapon, each case is
examined on its own facts. Lucero v. State, 915 S.W.2d 612, 614 (Tex. App.- El Paso
1996, pet. ref'd). In making that determination, the cases seem to focus on five basic
criteria to be considered in making that determination. They include: 1) the physical
proximity between the victim and the assailant or object used; 2) the words or threats used
by the assailant; 3) the size and shape of the item; 4) the object's capacity to inflict death
or serious bodily injury; and 5) the manner in which the assailant used the object. No
single one of these factors is determinative. See Tisdale v. State, 686 S.W.2d 110, 111
(Tex. Crim. App. 1984); Blain v. State, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983);
Williams v. State, 575 S.W.2d 30, 32-33 (Tex. Crim. App. 1979); Wade v. State, 951
S.W.2d 886, 892 (Tex. App.-Waco 1997, pet. ref'd). It is not necessary to show that the
object in question actually did cause serious bodily injury or that the assailant intended to
use it in a manner that could cause death or serious bodily injury, but it is sufficient to show
that he did use it in a manner that could cause death or serious bodily injury. Bui v. State,
964 S.W.2d 335, 342-43 (Tex. App.-Texarkana 1998, pet. ref'd); Charles v. State, 915
S.W.2d 238, 240 (Tex. App.-Beaumont 1996, pet. ref'd). The nature and extent of any
injuries is a factor to be considered in determining whether the assailant used the object
as a deadly weapon. Harper v. State, 753 S.W.2d 516, 518 (Tex. App.-Houston [1st Dist.]
1988, pet. ref'd).

 For example, the following objects have been found to be deadly weapons in the
manner of their use: a club, a board, a knife, a hammer, a pipe, a fist, fire, a hand, a foot,
a Coke bottle, a leg of a bar stool, and an ax handle. See Bui v. State, 964 S.W.2d at 343.
In advancing his argument, appellant places some emphasis on the fact that the telephone
was not introduced into evidence and, because it was not available for the jury's
consideration, it could not have reasonably concluded that the phone was used as a deadly
weapon. However, the actual instrument used in the commission of an offense need not
be introduced into evidence if a witness is able to testify about it and the manner in which
it was used. Billey v. State, 895 S.W.2d 417, 420 (Tex. App.-Amarillo 1995, pet. ref'd).

 The pertinent testimony here was that of the victim, Sydney Reagan Lester, her
father Earl Padgitt, and Lubbock Police Officer Juan Muniz. In relevant part, Officer Muniz
testified that on the day in question, he was dispatched to the residence of Ms. Lester's
father. Upon his arrival, he found the victim outside the house upset and crying. She told
him that appellant had struck her across the left side of her face with a telephone. The
officer noticed "a red mark from about her eye region up until the bottom of her chin, and
it was red, and it was slightly swollen." She told the officer that appellant was inside the
apartment with her when the phone rang. He picked it up, and when no one answered, he
became "very angry and slammed the phone as he hanged [sic] it up, yanked the cord out
of the wall, and proceeded to walk towards her with the phone in his right hand." With the
phone in his right hand, appellant struck her on the left side of her face with the phone. 
He then hit her a couple of times with his fist. She had a couple of cuts in her lip area and
bruises on her face "from about the eye area to about the bottom of the chin." He did not
observe that the victim had any permanent disfigurement or broken bones.

 Earl Padgitt, the victim's father, testified that she had called him and he went over
to bring her back to his house. When he arrived, his daughter was crying and upset. He
saw that she had been hit, there was blood in the eye area, and there was swelling. She
told him that she had been hit with a telephone. Subsequently, he returned with the police
to the scene and saw the telephone was broken. When cross-examined, he averred that
the telephone was a cordless one and that the receiver portion of the phone was what 
shattered.

 The victim testified that on the day in question, she had gone to appellant's father's
house to let him see the baby and returned with appellant to her apartment. The phone
rang, and when appellant picked up the phone, no one answered. He started yelling at her
saying that was probably her boyfriend. He followed her from room to room, put her in the
bedroom, and "he hit me over the left side of my head with the phone." She averred that
her head immediately started bleeding and her face "was swollen really bad out to here." 
The blow to her head caused her pain and, if her head had not been turned, the blow
would have been "[r]ight in the middle of my face." She said that he had hit her with "a lot
of force," and she believed "could have caused her serious injury to [her] face." Under
cross-examination, she said that she had not received any broken bones and that she did
not go to the emergency room at the hospital.

 Viewed in the light by which we must view it, and considering all the surrounding
circumstances, including the testimony relating to the location of the impact, the fact that
the blow was with sufficient force to shatter the telephone, and the belief of the victim that
it "could have caused" her serious injury, we cannot say that the jury's evident conclusion
that appellant's use of the telephone was intended to cause her serious bodily injury was
so against the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Accordingly, even if the question was before us, we would overrule appellant's second
issue.

 For the reasons stated here and those stated in our original opinion, no reversible
error has been shown and the judgment of the trial court is affirmed. 

 John T. Boyd

 Senior Justice


Do not publish.
1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. 
Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2004).