NO. 07-04-0598-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 1, 2005

______________________________

ARTHUR RAY WILLIAMS, APPELLANT

V.

REGIONAL ISLAMIC CHAPLAIN TALIB, ET AL., APPELLEES

_________________________________

FROM THE 251ST DISTRICT COURT OF RANDALL COUNTY;

NO. 48692-C; HONORABLE PATRICK A. PIRTLE, JUDGE

_______________________________

Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION

Appellant Arthur Ray Williams an inmate proceeding 
pro se
 and 
in forma pauperis
, initiated legal action on July 3, 2000, against appellees for, among other causes, civil rights violations.  Williams filed and signed numerous pleadings; however, as early as September 14, 2000, inmate Herbert Feist began signing pleadings for Williams.  On December 6, 2004, this Court received a notice of appeal signed by Feist complaining of the trial court’s order of dismissal for want of prosecution dated August 18, 2004.  On December 27, 2004, this Court received a letter from Feist referencing a second attempt to appeal.  This Court notified Feist by letter dated January 5, 2005, that the notice of appeal appeared untimely and requested a response.  Feist responded insisting that a timely notice had been filed on November 8, 2004.  For the reasons expressed herein, we affirm the trial court’s order of dismissal.

A review of the clerk’s record filed on January 5, 2005, does not contain a notice of appeal allegedly filed on November 8, 2004.  However, it does contain a notice of appeal signed by Williams and filed on February 13, 2003, complaining of the trial court’s order to appear on January 24, 2003, noting that failure to appeal would result in dismissal.  Rule 27.1(a) of the Texas Rules of Appellate Procedure provides that a prematurely filed notice of appeal is effective and deemed filed on the day of, but after, the event that begins the period for perfecting the appeal.  Thus, we conclude our jurisdiction was invoked by Williams’s premature notice.  

This appeal is now being pursued by Feist.  A person who is not a licensed attorney is not permitted to represent anyone other than himself.  7 Tex. Jur.3d 
Attorneys At Law
 § 108 (1997).  The Texas Legislature mandates that a person who is not a member of the State Bar may not practice law.  Tex. Gov’t Code Ann. § 81.102(a) (Vernon 1998).  However, section 81.102(b) provides that the Supreme Court of Texas may promulgate rules for the limited practice of law by (1) attorneys licensed in another jurisdiction; (2) bona fide law students; and (3) unlicensed graduate students who are attending or have attended a law school approved by the Supreme Court.  The Legislature defines the practice of law, among other things, as the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court. § 81.101(a).

On March 19, 2001, Feist filed a motion to intervene in Williams’s suit contending he was a necessary party as the unit Islamic leader.  However, there is no order from the trial court granting his request.  Feist has not demonstrated he was a party to the underlying case nor that he falls within any of the categories of persons who are permitted to practice law.  As such, he has no authority to pursue this appeal on Williams’s behalf. 
See
 Jimison by Parker v. Mann, 957 S.W.2d 860, 861 (Tex.App.–Amarillo 1997, no writ) (per curiam); 
see also
 Magaha v. Holmes, 886 S.W.2d 447, 448 (Tex.App.–Houston [1st Dist.] 1994, no writ); 
cf. 
Tex. Code Crim. Proc. Ann. art. 11.13 (Vernon 1977) (providing that a petition for a writ of habeas corpus may be signed by any person).

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis

    Justice

 vidence, we view all of it neutrally, and reversal is only required if the evidence of guilt is so obviously weak as to undermine confidence in the jury’s determination or the proof of guilt is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  Further, in conducting that review, we must give appropriate deference to the jury’s findings so as not to substitute our judgment for that of the jury.  
King v. State, 
29 S.W.3d 556, 563 (Tex. Crim. App. 2000); 
Clewis v. State
, 922 S.W.2d 126, 129, 135 (Tex. Crim. App.1996); 
 
Barnum v. State, 
 97 S.W.3d 373, 378-79 (Tex. App.–Amarillo 2003,  pet. ref’d).

The Penal Code defines deadly weapon as “a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury,” or “anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.”  Tex. Pen. Code Ann. §1.07(a)(17)(A) & (B) (Vernon Supp. 2004). In this case, the telephone was not a deadly weapon 
per se
.  
See Hill v. State
, 913 S.W.2d 581, 582-83 (Tex. Crim. App.1996) (explaining characterization of deadly weapons 
per se).  
Obviously, it was not manifestly made, designed, or adapted for the purpose of causing death or serious bodily injury.  That being so, it was the State’s burden to prove that appellant intended to use the telephone in a manner that was capable of causing death or serious bodily injury.

In determining whether an item was used as a deadly weapon, each case is examined on its own facts.  
Lucero v. State
, 915 S.W.2d 612, 614 (Tex. App.– El Paso 1996, pet. ref’d).  In making that determination, the cases seem to focus on five basic criteria to be considered in making that determination.  They include:  1) the physical proximity between the victim and the assailant or object used; 2) the words or threats used by the assailant; 3) the size and shape of the item; 4) the object’s capacity to inflict death or serious bodily injury; and 5) the manner in which the assailant used the object.  No single one of these factors is determinative.  
See Tisdale v. State
, 686 S.W.2d 110, 111 (Tex. Crim. App. 1984); 
Blain v. State
, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); 
Williams v. State
, 575 S.W.2d 30, 32-33 (Tex. Crim. App. 1979); 
Wade v. State
, 951 S.W.2d 886, 892 (Tex. App.–Waco 1997, pet. ref’d). It is not necessary to show that the object in question actually did cause serious bodily injury or that the assailant 
intended
 to use it in a manner that could cause death or serious bodily injury, but it is sufficient to show that he 
did
 use it in a manner that could cause death or serious bodily injury.  
Bui v. State
, 964 S.W.2d 335, 342-43 (Tex. App.–Texarkana 1998, pet. ref’d); 
Charles v. State
, 915 S.W.2d 238, 240 (Tex. App.–Beaumont 1996, pet. ref’d).  The nature and extent of any injuries is a factor to be considered in determining whether the assailant used the object as a deadly weapon.  
Harper v. State
, 753 S.W.2d 516, 518 (Tex. App.–Houston [1st Dist.] 1988, pet. ref’d).

For example, the following objects have been found to be deadly weapons in the manner of their use:  a club, a board, a knife, a hammer, a pipe, a fist, fire, a hand, a foot, a Coke bottle
,
 a leg of a bar stool, and an ax handle.  
See Bui v. State
, 964 S.W.2d at 343. In advancing his argument, appellant places some emphasis on the fact that the telephone was not introduced into evidence and, because it was not available for the jury’s consideration, it could not have reasonably concluded that the phone was used as a deadly weapon.  However, the actual instrument used in the commission of an offense need not be introduced into evidence if a witness is able to testify about it and the manner in which it was used.  
Billey v. State
, 895 S.W.2d 417, 420 (Tex. App.–Amarillo 1995, pet. ref’d).

The pertinent testimony here was that of the victim, Sydney Reagan Lester, her father Earl Padgitt, and Lubbock Police Officer Juan Muniz.  In relevant part, Officer Muniz testified that on the day in question, he was dispatched to the residence of Ms. Lester’s father.  Upon his arrival, he found the victim outside the house upset and crying.  She told him that appellant had struck her across the left side of her face with a telephone.  The officer noticed “a red mark from about her eye region up until the bottom of her chin, and it was red, and it was slightly swollen.”  She told the officer that appellant was inside the apartment with her when the phone rang.  He picked it up, and when no one answered, he became “very angry and slammed the phone as he hanged [sic] it up, yanked the cord out of the wall, and proceeded to walk towards her with the phone in his right hand.”  With the phone in his right hand, appellant struck her on the left side of her face with the phone.  He then hit her a couple of times with his fist.  She had a couple of cuts in her lip area and bruises on her face “from about the eye area to about the bottom of the chin.”  He did not observe that the victim had any permanent disfigurement or broken bones.

Earl Padgitt, the victim’s father, testified that she had called him and he went over to bring her back to his house.  When he arrived, his daughter was crying and upset.  He saw that she had been hit, there was blood in the eye area, and there was swelling.  She told him that she had been hit with a telephone.  Subsequently, he returned with the police to the scene and saw the telephone was broken.  When cross-examined, he averred that the telephone was a cordless one and that the receiver portion of the phone was what  shattered.

The victim testified that on the day in question, she had gone to appellant’s father’s house to let him see the baby and returned with appellant to her apartment.  The phone rang, and when appellant picked up the phone, no one answered.  He started yelling at her saying that was probably her boyfriend.  He followed her from room to room, put her in the bedroom, and “he hit me over the left side of my head with the phone.”  She averred that her head immediately started bleeding and her face “was swollen really bad out to here.”  The blow to her head caused her pain and, if her head had not been turned, the blow would have been “[r]ight in the middle of my face.”  She said that he had hit her with “a lot of force,” and she believed “could have caused her serious injury to [her] face.”  Under cross-examination, she said that she had not received any broken bones and that she did not go to the emergency room at the hospital.

Viewed in the light by which we must view it, and considering all the surrounding circumstances, including the testimony relating to the location of the impact, the fact that the blow was with sufficient force to shatter the telephone, and the belief of the victim that it “could have caused” her serious injury, we cannot say that the jury’s evident conclusion that appellant’s use of the telephone was intended to cause her serious bodily injury was so against the overwhelming weight of the evidence as to be clearly wrong and unjust.  Accordingly, even if the question was before us, we would overrule appellant’s second issue.

For the reasons stated here and those stated in our original opinion, no reversible error has been shown and the judgment of the trial court is affirmed. 

John T. Boyd

Senior Justice

Do not publish.