# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00711-CR

**Willie Alexander, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
NO. D-1-DC-07-203347, HONORABLE JULIE H. KOCUREK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Willie Alexander appeals from a conviction by a jury of the offense of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2) (West Supp. 2007). The jury assessed punishment at seven years' imprisonment. In one issue, appellant contends that the evidence was legally and factually insufficient to support his conviction. For the reasons that follow, we affirm the judgment of conviction.

## BACKGROUND

At trial, the evidence showed that appellant engaged in a struggle with James Windom outside Windom's home on the night of June 12, 2007. Windom received multiple injuries from the incident including a head wound that required medical treatment.[1]

---

[1] Windom was treated at a hospital, and his treatment included three staples to close his head wound.

In addition to Windom, witnesses for the State included Windom's wife, Dawn Windom; a neighborhood security officer, Luis Montilla; and a police officer, Brian Narciso. Mrs. Windom testified that she and her husband were in their home on the night of the incident and that Windom's truck, with his work tools in the truck's panel compartments, was parked in front of their house. When she heard a noise that sounded "like somebody was rummaging through a truck" outside their house, she reported the noise to Windom, and he went outside to investigate. Mrs. Windom observed her husband struggling with appellant near Windom's truck and saw Windom "blocking from the punches [appellant] was throwing at him." She called the police after the two men continued their struggle out of her sight.

Windom testified that when he went outside to investigate, he saw appellant by his truck and, as he approached appellant, appellant told Windom, "[I]f you come over here, I'll kick your ass." Windom then heard appellant close a storage panel on the truck. Appellant backed away from the truck and, as he did so, Windom observed a tool[2] in appellant's hand. Windom did not remember engaging in fisticuffs with appellant, but did recall that appellant threatened him and struck him on the head with the tool.

Luis Montilla testified that, as he arrived at the scene, he observed the struggle and saw appellant strike Windom with the tool, knocking Windom down. Montilla also struggled with appellant, but was able to restrain and handcuff him. Narciso testified that he was the first police officer to arrive at the scene and that he recovered the tool.

---

[2] Witnesses refer to the tool using different terms—"heavy-duty wrench," "vice-grip," "pliers," and "grip pliers." There is also a picture of the tool in the record. We refer to it as the "tool."

Appellant testified as the only witness for the defense. He testified that he was in the subdivision with a friend who had relatives in the area and that he wanted to look at a truck because he had a friend who was interested in buying it. He testified that Windom's truck was not that truck, that he did not take anything from Windom's truck, and that he never said a word to Windom. Appellant testified that he was carrying "grip pliers," a tool he used to operate the "emergency brake release" on his truck. Although he admitted to striking Windom on the head with his hand while holding the "grip pliers" and to smoking crack cocaine on the day of the incident, he testified that Windom and Montilla took turns "punching" him, that he was injured in the incident, and that he was justified in using force as an act of self-defense.

The jury found appellant guilty of aggravated assault with a deadly weapon and assessed punishment at seven years' imprisonment. The trial court entered judgment in accordance with the jury's verdict. This appeal followed.

**ANALYSIS**

On appeal, appellant does not contest the jury's finding that he committed assault. He contends that the evidence is legally and factually insufficient to uphold his conviction because there was "no evidence that the wrench [tool] was displayed or used in a manner which establishes the intent to cause death or serious bodily injury." His complaint addresses the aggravating element of the offense—that he used or exhibited a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a). Appellant contends that, to support a deadly weapon finding, there must be evidence that the weapon was used with the intent to cause death or serious bodily injury.

3

A person is guilty of the offense of aggravated assault if the person commits an assault and the person either (1) causes serious bodily injury to another, or (2) uses or exhibits a deadly weapon during the commission of the assault. *See* Tex. Penal Code Ann. § 22.02(a) (West Supp. 2007). "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id*. § 1.07(a)(46) (West Supp. 2007). The penal code defines "deadly weapon" as:

> (A)  a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or
>
> (B)  anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

*Id*. § 1.07(a)(17) (West Supp. 2007). Factors that a jury may consider in determining whether an object is a deadly weapon include: (1) the physical proximity between parties, (2) threats or words used by the assailant, (3) the size and shape of the object, (4) the manner in which the assailant allegedly used the object, and (5) the potential of the object to inflict death or serious injury. *See Brown v. State*, 716 S.W.2d 946, 947 (Tex. Crim. App. 1986).

The court of criminal appeals has considered the question of what evidence is required to support a deadly weapon finding. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). In *McCain*, appellant had a butcher knife in his back pocket when he attacked the complainant. *Id*. at 499. Although complainant saw the knife in appellant's back pocket during the attack, appellant never "touched, brandished, referred to, or overtly displayed the knife in any way." *Id*. In upholding the conviction for aggravated robbery, the court of criminal appeals addressed what

4

is required to establish the deadly weapon element under section 1.07(a)(17)(B). *Id.* The court of criminal appeals concluded that the State is not required to prove specific intent to use the object as a deadly weapon:

> The provision's plain language does not require that the actor actually intend death or serious bodily injury; an object is a deadly weapon if the actor intends a use of the object in which it would be capable of causing death or serious bodily injury. The placement of the word "capable" in the provision enables the statute to cover conduct that threatens deadly force, even if the actor has no intention of actually using deadly force.

*Id.* at 503. The focus is on the "capability" of the object's use to cause death or serious bodily injury, not the actor's intent to use the weapon to cause death or serious bodily injury.[3] *Id.* In this context,

---

[3] To support his contention that the State must prove intent to cause death or serious bodily injury, appellant relies on *Bui v. State*, 964 S.W.2d 335 (Tex. App.—Texarkana 1998, pet. ref'd.), and *Thomas v. State*, 821 S.W.2d 616 (Tex. Crim. App. 1991). These cases do not support appellant's argument. In *Thomas*, the issue was whether a "shank" was a deadly weapon within subsection (A) of the penal code's deadly weapon definition. 821 S.W.2d at 617. In that context, the court concluded that "the State is not required to show that a knife of this kind was actually used or intended to be used in a manner capable of causing death or serious bodily injury." *Id.* at 621. In *Bui*, the issue was whether the evidence was legally and factually sufficient to support the "jury's finding that the Duraflame log was a deadly weapon." 964 S.W.2d at 341-42. The court explained what the State had to prove to support a deadly weapon finding:

> A Duraflame log is not a deadly weapon per se, but it can become one if, in the manner of its use, it is capable of causing death or serious bodily injury. . . . Since the Duraflame log is not a deadly weapon per se, the State must have shown that the Duraflame log was capable of causing death or serious bodily injury in the manner of its use by [defendant]. . . . It is not necessary to show that the Duraflame log actually did cause serious bodily injury. . . . Further, the State did not need to prove that [defendant] *intended* to use the Duraflame log in such a manner, if it proved that he *did* use the log in a manner that could cause death or serious bodily injury.

*Bui*, 964 S.W.2d at 343 (internal citations omitted).

we turn to our review of the legal and factual sufficiency of the evidence to support appellant's conviction of aggravated assault with a deadly weapon.

In assessing the legal sufficiency of the evidence to support a criminal conviction, we review the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)*; Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005). Viewing the evidence in the light most favorable to the verdict, we assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Viewing the evidence in the light most favorable to the verdict, appellant admitted striking Windom with his hand while holding "pliers." Windom testified that appellant's act of striking him on the head with the tool was "deliberate," that appellant "threatened before doing it," and that appellant's swing was "intentionally thrown." Montilla testified that he witnessed appellant striking Windom with the tool and, after appellant struck Windom, Windom was "conked out." Additionally, Narciso testified that the "heavy-duty wrench" weighed approximately one pound and was capable of causing either serious bodily injury or death:

> Q: Officer Narciso, in your experience of being a police officer, have you dealt with a variety of cases that have involved deadly weapons?
>
> A: Yes.
>
> Q: In addition to the traditional things like knives and guns, have you had an opportunity to deal with cases where there's a deadly weapon other than a knife or a gun?

6

A:     Yes.

* * *

Q:     And based on your training and experience, would you consider that the wrench [tool] that is State's Exhibit 7 that you recovered that night, that in the manner of its use it could be considered something capable of causing either serious bodily injury or even death?

A:     Yes.

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence was legally sufficient to support the conviction of aggravated assault with a deadly weapon.

In evaluating the factual sufficiency of the evidence, we view all of the evidence in a neutral light and ask if the proof of guilt is against the great weight and preponderance of the evidence. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003). We may set aside the verdict if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the verdict is against the great weight and preponderance of the evidence. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).

Viewing the evidence in a neutral light, appellant testified that he was only in the neighborhood to look at a truck that a friend was interested in buying, that he did not take anything from Windom's truck or say anything to Windom, and that he was acting in self-defense. The testimony of Mrs. Windom, Windom, and Montilla, however, was that appellant was the aggressor and that he deliberately struck Windom with the tool. It was within the province of the jury to determine the credibility of the witnesses and the weight to be given to their testimony. *See Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998) (jury is exclusive judge of witness credibility

7

and of weight to be given their testimony, and it is the exclusive province of the jury to reconcile conflicts within the evidence). The jury could have concluded that appellant's testimony that he was acting in self-defense was not credible.[4] It was within the province of the jury to reconcile the conflicts in appellant's testimony and to judge his credibility. *See id.* We conclude that the evidence is not so weak as to be clearly wrong and manifestly unjust and that the verdict is not against the great weight and preponderance of the evidence.

## CONCLUSION

Having concluded the evidence is legally and factually sufficient to support the jury's verdict of aggravated assault with a deadly weapon, we overrule appellant's issue and affirm the trial court's judgment of conviction.

_____

Jan P. Patterson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed: July 9, 2008

Do Not Publish

---

[4] There were several inconsistencies in appellant's testimony. For example, his testimony regarding the extent of his injuries conflicted with the medical records and other witnesses' testimony. Appellant's testimony that his heart rate increased due to high blood pressure also conflicted with his admission that he smoked crack cocaine on the day of the incident and Narciso's testimony that smoking crack cocaine can elevate a person's heart rate.