Opinion issued October 2, 2008











     






In The
Court of Appeals
For The
First District of Texas




NO. 01-06-01164-CR
NO. 01-06-01165-CR




SALVADOR MARTINEZ, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause Nos. 1074916, 1074917




MEMORANDUM OPINION
          Appellant, Salvador Martinez, appeals from convictions for evading arrest with
a motor vehicle and aggravated assault on a public servant with a deadly weapon.


 
See Tex. Pen. Code Ann. § 38.04 (Vernon 2003) (evading arrest); Id. § 22.02
(Vernon Supp. 2008) (aggravated assault). The jury found appellant guilty of both
charges, and the trial court assessed punishment at 18 years in prison for the
aggravated assault and a concurrent 10 years in prison for the evading arrest. The
trial court made an affirmative finding that appellant’s motor vehicle was a deadly
weapon used to commit the aggravated assault. In his fourth issue, appellant
contends the evidence is factually insufficient to support the finding of use of a
deadly weapon in the conviction for aggravated assault. In his remaining issues,
which concern both convictions, appellant asserts the trial court abused its discretion
by (1) allowing the State’s attorney to make improper closing arguments; (2)
admitting extraneous offenses; (3) allowing the State to pose an improper
commitment question during voir dire; (4) admitting testimony from a witness who
violated “the Rule”; and (5) limiting his right to call a witness and present testimony
from a grand jury proceeding. We conclude the evidence is factually sufficient, the
prosecutor’s closing arguments were proper, the trial court properly admitted
evidence of the extraneous offenses, the prosecutor’s questions during voir dire did
not harm appellant’s substantial rights, the trial court properly allowed the witness
under “the Rule” to testify, and the trial court properly excluded the grand jury
testimony. We affirm.BackgroundDuring the evening of June 29, 2006, the Pasadena Police Department received
a call concerning suspicious activity at the Lone Star Inn motel. The caller said two
men were looking into vehicles in the parking lot around two o’clock in the morning. 
The police department sent Officer Hudson along with two other police officers to
investigate the situation. When he arrived at the motel, Officer Hudson walked
toward the front of the motel, where he saw a white car with two men sitting inside. 
The car turned and slowly approached him. Officer Hudson drew his weapon, as he
repeatedly instructed the driver, who was later identified as appellant, to stop the car,
but instead of stopping, appellant accelerated towards him.
          Officer Hudson believed the car was going to hit him and cause him serious
bodily injury or death. Officer Hudson jumped out of the way of the oncoming car. 
While doing so, he fired his weapon into the driver’s side window, in an attempt to
prevent serious injury to himself. Appellant, who was shot in the left arm, continued
to drive, leaving the motel. Two officers chased the car for approximately ten miles.
Appellant and his passenger, Ishmeal Naranjo, were arrested after they abandoned the
car by running on foot. When they were arrested after the chase, the officers saw that
appellant had a gunshot injury in his left arm and Naranjo had a gunshot injury in his
inner right thigh area.
          At trial, Roy Draper, a defense witness, testified that he was at the motel to
buy, sell, and consume crack cocaine. He went into the front office to use a vending
machine, and, as he was coming out, observed a car passing him in the driveway area
near two Pasadena police officers. He heard one of the officers say “put your hands
up,” so he did so believing they were directing the statement at him. Draper testified
that he was absolutely sure the vehicle appellant was driving came to a complete stop. 
Another police officer came from the front parking lot area of the motel with his
weapon drawn and approached the driver’s side of the car. Draper testified that he
was positive both the occupants of the car had their hands in the air at that time. 
Draper heard someone say “weapon” and then saw the officer with his weapon drawn
fire it. After the shot was fired, the car started moving and left the premises of the
motel. He stated that the officer who shot at the car was never on the passenger side
of the vehicle, the car never accelerated toward the officer, and the officer was never
in a position in front of the car.
          Appellant testified that Naranjo asked him for a ride to a motel to see Naranjo’s
girlfriend. Appellant drove to the motel entering through the driveway area to park
inside the main courtyard area. After Naranjo had a conversation outside with a
friend of his girlfriend, appellant and Naranjo got back into the car and headed back
towards the driveway. Appellant stated that as he was driving down the driveway,
two uniformed police officers ran up to the driver’s side of his car. At this point,
appellant heard “stop the car, put your hands in the air.” Appellant stated that he
complied with the order. The police officer with his gun drawn approached
appellant’s car and then appellant was shot. Appellant sat for a few seconds and then
drove off, in fear of being shot again. Appellant acknowledged that he did not stop
his car for ten miles while officers chased him.
Factual Sufficiency of the Evidence
          We begin with the fourth issue because it concerns only aggravated assault. 
In his fourth issue, appellant contends that the evidence is factually insufficient to
establish that appellant’s automobile was a “deadly weapon” in the manner of its use
or intended use. See Tex. Penal Code Ann. § 1.07 (a)(17)(B) (Vernon Supp. 2008).
          A.      Standard of Review       
          When conducting a factual-sufficiency review, we view all of the evidence in
a neutral light. Ladd v. State, 3 S.W.3d 547, 557 (Tex. Crim. App. 1999). We will
set the verdict aside only if (1) the evidence is so weak that the verdict is clearly
wrong and manifestly unjust or (2) the verdict is against the great weight and
preponderance of the evidence. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App.
2000). Under the first prong of Johnson, we cannot conclude that a conviction is
“clearly wrong” or “manifestly unjust” simply because, on the quantum of evidence
admitted, we would have voted to acquit had we been on the jury. Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Under the second prong of Johnson,
we cannot declare that a conflict in the evidence justifies a new trial simply because
we disagree with the jury’s resolution of that conflict. Id. Before finding that
evidence is factually insufficient to support a verdict under the second prong of
Johnson, we must be able to say, with some objective basis in the record, that the
great weight and preponderance of the evidence contradicts the jury’s verdict. Id. In
conducting a factual-sufficiency review, we must also discuss the evidence that,
according to the appellant, most undermines the jury’s verdict. See Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).
          “Appellate courts should afford almost complete deference to a jury’s decision
when that decision is based upon an evaluation of credibility.” Lancon v. State, 253
S.W.3d 699, 705 (Tex. Crim. App. 2008). “The jury is in the best position to judge
the credibility of a witness because it is present to hear the testimony, as opposed to
an appellate court who relies on the cold record.” Id. The jury may choose to believe
some testimony and disbelieve other testimony. Id. at 707.
          B.      Applicable Law
          A person commits aggravated assault on a public servant with a deadly weapon
when: (1) he intentionally or knowingly threatens imminent bodily injury; (2) to a
person whom he knows is a public servant; (3) while the public servant is lawfully
discharging an official duty; and (4) uses a deadly weapon during the course of
committing the assault. See Tex. Penal Code Ann. §§ 22.01(a)(2); 22.02(a)(2);
22.02(b)(2)(B) (Vernon Supp. 2008).
          The Texas Penal Code defines “deadly weapon” as “anything that in the
manner of its use or intended use is capable of causing death or serious bodily
injury.” Id. § 1.07 (a)(17)(B). To sustain a deadly weapon finding, there must be
evidence that someone was endangered by the defendant’s use of the vehicle and not
merely a hypothetical potential for danger if others had been present. Mann v. State,
13 S.W.3d 89, 92 (Tex. App.—Austin 2000) (deadly weapon finding sustained when
testimony showed on-coming driver was forced to take evasive action to avoid
collision) aff’d on other grounds, 58 S.W.3d 152 (Tex. Crim. App. 2001); Ochoa v.
State, 119 S.W.3d 825, 827 (Tex. App.—San Antonio 2003, no pet.) (deadly weapon
finding sustained where testimony showed Ochoa came “real close to striking and
hitting” another car); Davis v. State, 964 S.W.2d 352, 354 (Tex. App.—Fort Worth
1998, no pet.) (deadly weapon finding sustained where testimony showed Davis
drove car into on-coming lane and evasive action was necessary to avoid collision).
          C.      Analysis      
          Appellant contends “the evidence only showed that appellant was using the
vehicle to escape from the scene and not to try to run over the officer.” Although
appellant correctly notes that the only way out of the parking lot was through the
passageway where the officer stood, that evidence does not refute other evidence that
appellant accelerated towards the officer. Officer Hudson testified that he feared he
was in danger of being run over by appellant when the vehicle sped towards him. He
stated to the jury that he had seconds to jump out of the way to prevent serious bodily
injury. His testimony supports a finding that appellant drove the vehicle in a manner
capable of causing death or serious bodily injury to the officer. 
          We must defer to the jury’s determination that implicitly found the officer’s
testimony credible. See Lancon, 253 S.W.3d at 705. Viewing the evidence in a
neutral light, the evidence of the use of a deadly weapon is not so weak that the
verdict is clearly wrong or manifestly unjust, nor is the finding against the great
weight and preponderance of the evidence. See Johnson, 23 S.W.3d at 11. We hold
the evidence is factually sufficient to uphold the deadly weapon finding.
          We overrule appellant’s fourth issue.
          In his remaining seven issues, appellant challenges both convictions for
aggravated assault and evading arrest by attacking the trial court’s rulings that
affected both convictions.
Commitment Question
            In his third issue, appellant contends that the trial court erred by allowing the
State, over his objection, to pose an improper commitment question to the venire
panel. Appellant complains that the prosecutor used a hypothetical that was factually
specific to the case on trial.
            Questions during voir dire are proper if they seek to discover a juror’s views
on an issue applicable to the case. Barajas v. State, 93 S.W.3d 36, 38 (Tex. Crim.
App. 2002) (citing Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim. App. 1985)). 
Voir dire examination permits the parties to assess the desirability of prospective
jurors and to select a “competent, fair, impartial, and unprejudiced jury.” Staley v.
State, 887 S.W.2d 885, 896 (Tex. Crim. App. 1994). Because a trial court has broad
discretion over the process of selecting a jury, an appellate court should not disturb
a trial court’s ruling on the propriety of a particular question during voir dire absent
an abuse of discretion. Barajas, 93 S.W.3d at 38.
          An attorney may not “attempt to bind or commit a venire member to a verdict
based on a hypothetical set of facts.” Lydia v. State, 109 S.W.3d 495, 497 (Tex.
Crim. App. 2003). “Commitment questions are those that commit a prospective juror
to resolve, or to refrain from resolving, an issue a certain way after learning a
particular fact.” Standefer v. State, 59 S.W.3d 177, 179 (Tex. Crim. App. 2001).
While these types of questions generally “elicit a ‘yes’ or ‘no’ answer, an open-ended
question can be a commitment question if the question asks the prospective juror to
set the hypothetical parameters for his decision-making.” Id. at 180. Commitment
questions that attempt to bind prospective jurors to a position, using a hypothetical
or otherwise, are improper and “serve no purpose other than to commit the jury to a
specific set of facts before the presentation of any evidence at trial.” Lydia, 109
S.W.3d at 497.
          Not all commitment questions, however, are improper. Standefer, 59 S.W.3d
at 179–83; Sanchez v. State, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005) (stating,
“An improper commitment question attempts to create a bias or prejudice in the
venireman before he has heard the evidence, whereas a proper voir dire question
attempts to discover a venireman’s preexisting bias or prejudice.”). In Standefer, the
Texas Court of Criminal Appeals articulated a three-prong test for determining
whether a voir dire question calls for an improper commitment. Standefer, 59 S.W.3d
at 179–83. The first prong requires the trial court to decide whether a particular
question is a commitment question. Id. at 179–81. If the court determines that a
particular question is a commitment question, the second prong requires the court to
consider whether the question leads to a valid challenge for cause. Id. at 181–82. If
the question meets the “challenge for cause” requirement, the third prong requires the
court to determine whether the question includes only those facts necessary to test
whether a prospective juror is challengeable for cause. Id. at 182–83.
          The prosecutor posed a scenario to the jury using a hypothetical regarding a
police officer who shoots a suspect. The defense objected that it was an improper
commitment question. The trial court agreed, sustained the objection, and instructed
the prosecutor to rephrase the line of questioning. The prosecutor rephrased the
question as follows: “If a police officer uses force in response to a person committing
a crime, do you feel that no crime has been committed?” Defense counsel once again
objected, stating that the prosecutor was attempting to commit the jurors to a
particular set of facts, and the trial court overruled the objection. 
          We conclude the question was not an improper commitment question because
it did not commit the prospective jurors to resolve or refrain from resolving an issue
a certain way after learning a particular fact. See Standefer, 59 S.W.3d at 179. The
State’s question asked whether the jury felt no crime was committed if the police
officer used force against the person he saw committing a crime, but the phrasing of
the question made it unclear whether the jury would find that no crime was committed
by the appellant or that no crime was committed by the officer. Because the question
was unintelligible concerning what an affirmative or negative answer would indicate,
the question could not commit the jury to resolve or refrain from resolving an issue
in a certain way. See id.
          We overrule appellant’s third issue.
State’s Closing Arguments
          In his sixth and seventh issues, appellant complains that the trial court erred by
allowing the prosecutor to present two improper closing arguments constituting
reversible error. 
          A.      Applicable Law
           Proper jury argument generally falls within one of the following categories:
(1) summation of the evidence; (2) reasonable deductions from the evidence; (3)
answers to arguments by opposing counsel; and (4) pleas for law enforcement. York
v. State, No. PD 1753-06, 2008 WL 2677368, at *5 (Tex. Crim. App. July 2, 2008);
Palermo v. State, 992 S.W.2d 691, 696 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d) (citing Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996)). 
          In drawing inferences from the evidence, attorneys have wide latitude as long 
as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. 
Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). The jury is free to
accept or reject the conclusions and inferences suggested by the attorney in closing
argument. See id. at 400. The attorney may state an opinion based on the evidence
in the record, as long as the opinion does not constitute unsworn testimony. Bui v.
State, 964 S.W.2d 335, 345 (Tex. App.—Texarkana 1998, pet. ref’d). 
          B.      Expression of Opinion About Credibility of Officer
          Appellant, in issue six, contends the prosecution argued his own personal
opinion in the closing argument to the jury regarding the credibility of Officer
Hudson. The argument was as follows:
. . . And something changed. And he told you after that day he
didn’t mean gung ho in the way the defense counsel portrayed it. He
wasn’t sure he could be a cop anymore. He wasn’t sure he could do his
job anymore. And he stood up there and as he thought about it and he
got choked up and he got emotional, did he look like this gung ho
officer that walks out with pistols blazing? Did he appear to be that to
you? Because he didn’t to me.

(Emphasis added.) Defense counsel objected to the prosecutor improperly injecting
his personal opinion; the trial court sustained the objection, but denied the request to
instruct the jury to disregard.
          Appellant is incorrect in representing that the trial court allowed the argument
because the record shows that the trial court sustained the objection. The trial court,
however, did not instruct the jury to disregard the statement. We must therefore
determine whether it was error not to instruct the jury to disregard the prosecutor’s
statement. We conclude that the trial court did not err by failing to instruct the jury
to disregard the statement. 
          The prosecutor’s expression of opinion occurred while asking the jury whether
it viewed the officer’s demeanor the same way the prosecutor did. The prosecutor
was referencing what occurred in court in the jury’s presence. The State’s comment
did not constitute unsworn testimony because it was based on evidence in the record,
and the jury was free to accept or reject the conclusion suggested by the attorney. We
hold the trial court did not err by refusing to instruct the jury to disregard the State’s
comment. See Gaddis, 753 S.W.2d at 400; see also Bui v. State, 964 S.W.2d 335 at
345 (holding that, in context, prosecutor’s comment that defendant was dangerous
was not improper argument because prosecutor immediately followed statement with
discussion of evidence to support statement). 
          We overrule appellant’s sixth issue.
          C.      Comment About Witness’s Hallucinations
          In his seventh issue, appellant contends that the State argued outside the record
by suggesting that defense witness Roy Draper suffered from visual hallucinations. 
The State argued that “Roy Draper’s a schizophrenic who has hallucinations, hears
things, sees things . . . .” Appellant objected that it was outside the record that Draper
sees things and that the evidence showed “auditory hallucinations only.” 
          The trial court sustained appellant’s objection. Thus, we review whether the
trial court erred by refusing to instruct the jury to disregard the statement. We
conclude that the trial court did not err by refusing to instruct the jury to disregard the
statement. We conclude the prosecutor’s reference to the visual hallucinations was
a reasonable deduction from evidence that showed the witness suffered from auditory
hallucinations; the witness had been consuming illegal narcotics that night; and the
witness saw things that the officer said never happened. See Bui, 964 S.W.2d at 345. 
We hold the trial court did not err by refusing to instruct the jury to disregard the
statement.    
          We overrule appellant’s seventh issue.           
Evidentiary Rulings
          In his first, second, fifth, and eighth issues, appellant challenges evidentiary
rulings made by the trial court.
          A.      Standard of Review for Evidentiary Rulings
          A trial court’s ruling on the admissibility of evidence is reviewed under an
abuse-of-discretion standard. Moses v. State, 105 S.W.3d 622, 627 (Tex. Crim. App.
2003). If the trial court’s ruling was within the zone of reasonable disagreement,
there is no abuse of discretion. Id. Further, a trial court’s decision regarding
admissibility of evidence will be sustained if correct on any theory of law applicable
to the case, even when the court’s underlying reason for the decision is wrong.
Romero v. State, 800 S.W.2d 539, 543–44 (Tex. Crim. App. 1990) (citing Spann v.
State, 448 S.W.2d 128 (Tex. Crim. App. 1969)).
          B.      Extraneous Offense Testimony
          In his first and second issues, appellant contends the trial court abused its
discretion by allowing the State to cross-examine appellant regarding details of his
prior convictions for evading arrest and aggravated assault. Appellant contends the
admission of the evidence violated rules 403 and 609 of the rules of evidence. See
Tex. R. Evid. 403, 609. Although the court initially sustained appellant’s Motion in
Limine, the trial court allowed evidence of extraneous offenses after conducting a
hearing outside of the presence of the jury. The State sought to admit the evidence
of the extraneous offenses to rebut appellant’s defensive theory that appellant lacked
the requisite intent to commit the offense. The State’s rebuttal evidence was in
response to appellant’s testimony on direct examination that claimed he was not
trying to evade officers, but he was trying to escape to prevent himself from being
shot again. The State also noted that the details of the extraneous offenses were very
similar to this particular case. The trial court permitted the extraneous-offense
testimony, concluding that the probative value outweighed any unfair prejudicial
effect. During cross-examination, appellant discussed the extraneous offenses in
response to the State’s questions. Appellant’s prior convictions for evading arrest
were the result of purposely evading police in a vehicle and on foot. Appellant’s
prior conviction for aggravated assault resulted from his use of a vehicle as a deadly
weapon when he hit another person who was sitting on a car.
                    1.       Rule 609
          Rule 609 states “for the purpose of attacking the credibility of a witness,
evidence that the witness has been convicted of a crime shall be admitted if elicited
from the witness or established by public record but only if the crime was a felony or
involved moral turpitude, regardless of punishment, and the court determines that the
probative value of admitting this evidence outweighs its prejudicial effect to a party.”
Tex. R. Evid. 609. Under rule 609, the State is permitted to introduce evidence of
prior convictions, but not the details of the prior offenses. See Jones v. State, 38
S.W.3d 793, 799 (Tex. App.—Houston [14th Dist.] 2001, pet. ref’d) (citing Mays v.
State, 726 S.W.2d 937, 953 (Tex. Crim. App. 1986)). We conclude it would not have
been proper for the trial court to admit the details of the prior offense under rule 609. 
See id. It appears the evidence was admitted under rule 404(b) and appellant does not
challenge the admission of the evidence under that rule. See Tex. R. Evid. 404(b).


 
 We therefore must address whether the details of the prior offenses were admissible
under rule 403. See Tex. R. Evid. 403.
                    2.       Rule 403
          Rule 403 states “although relevant, evidence may be excluded if its probative
value is substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.” Tex. R. Evid. 403. The Court should consider
several factors in determining whether the prejudicial effect of evidence substantially
outweighs its probative value. Wheeler v. State, 67 S.W.3d 879, 888 (Tex. Crim.
App. 2002). These factors include: (1) how compellingly evidence of the extraneous
offense serves to make a fact of consequence more or less probable; (2) the
extraneous offense’s potential to impress the jury in some irrational but indelible way;
(3) the trial time that the proponent will require to develop evidence of the extraneous
misconduct; and (4) the proponent’s need for the extraneous transaction evidence. 
Id. 
          Concerning the first factor under Wheeler, we note that the admission of
appellant’s extraneous offenses introduced compelling evidence to indicate he would
intentionally attempt to run over Officer Hudson in an effort to escape police custody. 
This would be a reasonable belief because the evidence showed appellant previously
acted similarly in committing the same offenses of evading arrest and aggravated
assault with a deadly weapon. The extraneous offense evidence showed that in 2001,
appellant fled from a Houston police officer who tried to stop him, fleeing in a stolen
van and then on foot. Again in 2002, appellant fled from a Houston police officer
who was driving behind appellant with his lights and siren activated. Appellant did
not stop, but fled in his vehicle and then on foot. The extraneous offense evidence
also showed that in 1996 appellant committed aggravated assault by attempting to
strike a person who was sitting on a car with his vehicle. The evidence of the
extraneous offenses thus serves to make a fact of consequence more probable in this
case. 
          The second factor asks whether the extraneous offense has the potential to
impress the jury in some irrational but indelible way. The details of the prior offenses
were not gruesome and did not contain information that might impress the jury in
some irrational or indelible way. See Wheeler, 67 S.W.3d at 888.
          The third factor concerns the time to develop the evidence. The evidence of
all three extraneous offenses covers just eight pages of a record consisting of over
1100 pages. The State did not elicit detailed accounts of the offenses, but only a few
circumstances to show the similarity to the charged offenses. Although the State did
mention appellant’s prior convictions in closing arguments, the State told the jury that
it could use the convictions to help determine appellant’s credibility and intent “if it
aids you in that.”


 Regarding the fourth factor, the State displayed a need for the
evidence to counter appellant’s defensive theory that he did not possess the required
intent to commit the crimes charged against him. Other than the details and
circumstances of the charged offenses, the State had no other evidence to rebut
appellant’s defensive theory. See Trejos v. State, 243 S.W.3d 30, 55 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d) (holding prejudicial effect of evidence
regarding alert of cadaver dogs did not substantially outweigh probative value
because presentation of evidence did not consume too much time and State had need
of evidence). 
          We hold the trial court did not abuse its discretion by determining that the
prejudicial effect of the evidence did not substantially outweigh its probative value
under rule 403. See Blackwell v. State, 193 S.W.3d 1, 8 (Tex. App.—Houston [1st
Dist.] 2006, pet. ref’d) (holding extraneous offense evidence properly admitted to
rebut defensive theory). 
           We overrule appellant’s first and second issues. 
          C.      Violation of “The Rule”
          In his fifth issue, appellant contends that the trial court erred by allowing
Virginia Draper, mother of Roy Draper, to testify because the rule had been invoked. 
Virginia testified about her son’s health condition, drug use, and character.
          When the trial court invokes “the rule,” it excludes witnesses from the
courtroom pursuant to rule 614, which provides in relevant part: “At the request of
a party the court shall order witnesses excluded so that they cannot hear the testimony
of other witnesses, and it may make the order of its own motion.” Tex. R. Evid. 614. 
The purpose of the rule is to prevent the testimony of one witness from influencing
the testimony of another. Martinez v. State, 867 S.W.2d 30, 40 (Tex. Crim. App.
1993).
          The trial court must invoke the rule if requested to do so. Tex. R. Evid. 614.
After the rule has been invoked, enforcement of the rule is within the trial court’s
discretion. Guerra v. State, 771 S.W.2d 453, 474–75 (Tex. Crim. App. 1988); Walker
v. State, 2 S.W.3d 655, 658 (Tex. App.—Houston [14th Dist.] 1999, no pet.). A
violation of the rule may not be relied upon for reversal of the case unless it is shown
that the trial court abused its discretion by allowing the violative testimony. Guerra,
771 S.W.2d at 474–75; Walker, 2 S.W.3d at 658.
          Roy testified that appellant and his passenger were shot while the car was
stopped, and both occupants had their hands in the air. He also admitted that he had
been smoking crack that day and suffered from auditory hallucinations.
          During a recess outside the presence of the jury, it was discovered Virginia had
been sitting in the courtroom on the first day of the trial for about an hour during the
testimony of Officer Sorrell. The record shows that Virginia had no personal
knowledge of appellant’s offense and there was no reason to believe she would be a
witness at the time the rule was invoked. Rather, Virginia became a witness during
the trial after the State learned of her identity and wanted to use her testimony in
order to rebut testimony presented by Roy.
          She testified to the jury that Roy had been diagnosed as a paranoid
schizophrenic and his hallucinations worsened after the death of his father in 2006.
She stated Roy could be convinced to do anything and that he could be steered in any
direction.
          When, as here, the witness was one who had no connection with the case-in-chief of the State or the defense and was not likely to be called as a witness because
of a lack of personal knowledge regarding the offense, the trial court does not abuse
its discretion by allowing the testimony. See Guerra, 771 S.W.2d at 476. We hold
the trial court did not abuse its discretion by allowing Virginia to testify.
          We overrule appellant’s third issue.
          D.      Grand Jury Testimony
          In issue eight, appellant contends that the trial court erred by overruling his
motion to present evidence from the grand jury proceeding.
          The Texas Code of Criminal Procedure provides: “(a) The proceedings of the
grand jury shall be secret” and “(d) The defendant may petition a court to order the
disclosure of information otherwise made secret by this article . . . [upon] a showing
by the defendant of a particularized need.” Tex. Code Crim. Proc. Ann. art. 20.02
(Vernon Supp. 2008); see Bynum v. State, 767 S.W.2d 769, 782 (Tex. Crim. App.
1989). The totality of the circumstances must be examined when determining whether
a particularized need exists. Bynum, 767 S.W.2d at 781. A particularized need is not
shown simply because the requested testimony pertains to a key prosecution witness,
or that there is a “need” to locate inconsistencies in the witness’s testimony. Id. at
783.
          Appellant filed a written petition to obtain a court order granting him
permission to call as a defense witness the Assistant District Attorney (ADA) who
presented the case to the grand jury. The defense sought testimony from the ADA to
establish there was no witness testimony presented before the Harris County Grand
Jury that investigated whether the police shooting by Officer Hudson was justified.
The motion to obtain evidence about the grand jury proceeding was in response to
testimony from Officer Hudson that the grand jury cleared him of any wrongdoing. 
Therefore, the basis for the request was to further attack the credibility of Officer
Hudson. 
          Appellant has not demonstrated a particularized need for the ADA’s testimony.
See Bynum, 767 S.W. 2d at 783. The grand jury testimony would not impeach the
officer’s statement. See id. The officer only said he was cleared by the grand jury,
which he was. The officer did not comment about how or why the grand jury reached
the decision. Evidence from the ADA about whether witnesses were presented to the
grand jury would not impeach the officer’s statement. Moreover, the officer was
cross-examined about his credibility. See Legate v. State, 52 S.W.3d 797, 804 (Tex.
App.—San Antonio 2001, pet. ref’d) (defendant wanted grand jury testimony to
question witness’s credibility, but failed to demonstrate particularized need for
information because defense counsel fully cross-examined witness, effectively
questioning credibility). We hold the trial court did not abuse its discretion by
refusing to disclose grand jury information. 
          We overrule appellant’s eighth issue.
Conclusion
          We affirm the judgment of the trial court.




                                                             Elsa Alcala
                                                             Justice

Panel consists of Taft, Keyes, and Alcala.

Do not publish. Tex. R. App. P. 47.2(b).