Sharon K. TRAHAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–84–034 CR.

Court of Appeals of Texas,
Beaumont.

Oct. 17, 1984.

Rodney D. Conerly, Port Neches, for appellant.

John R. DeWitt, Asst. Crim. Dist. Atty., Beaumont, for appellee.

## OPINION

DIES, Chief Justice.

Appellant was convicted by a jury of injury to a child, and the jury assessed punishment at fifteen years confinement in the Texas Department of Corrections. Appeal has been perfected to this Court.

Ground of Error No. 1: "The Honorable Trial Court erred in failing to grant defendant's motion for instructed verdict because the evidence was insufficient to circumstantially prove that the appellant was the actor who actually caused the injuries to the victim."

Kathleen Conway of Jefferson County Child Welfare was called to St. Mary's Hospital on June 20, 1983. There she talked to Dr. Diengst who had called the witness' department. She also saw James Edward Morgan, eight months old, brought there by his mother, the appellant. The child had two "large thigh bruises", and bruises on the right cheek and neck. The witness ascertained this was the third time in a short period when the child had been brought to the hospital. The June 20th admission lasted until June 30th, when the baby was released to his mother's custody.

tion to *Jones v. State, supra, Kent v. State,* 374    S.W.2d 671 (Tex.Crim.App.1963).

Three days later he was brought to the Park Place hospital, unconscious, and immediately was flown by Life Flight to Herman Hospital in Houston. Appellant asked the witness if she would go to prison if her baby died. The baby stayed in Herman a month and was then released to a temporary managing conservatorship, which was achieved by court order. The baby was then placed in a foster home. The baby at the time of trial was sixteen months old, still could not walk, or sit without assistance.

Candace Collins, with Jefferson County Welfare, also observed the child at St. Mary's Hospital. She testified, "He had bruises to the front, inner parts of both legs, the thigh area, and he had a bruise on the right side of his face and the right side of his neck." He was unconscious most of the time, and his eyes were rolling back in his head. Three days after his release, the child was brought back to the hospital "seizuring" and "foaming at the mouth", in a comatose state. He was then flown to Herman Hospital in Houston. The baby has insufficient muscle control to achieve a sitting position by himself. It was her belief that the child will probably have to be institutionalized for the rest of his life.

Dr. William David Goldie, an Assistant Professor with the University of Texas Medical School in Houston, a pediatric neurologist, saw the child when he was admitted to Herman Hospital. He was in "acute onset of coma" and seizure, with brain swelling, and hemorrhage into the eyes and brain, which was caused by trauma. The child was near death. Later testing showed "cortical blindness". His problems were caused by "repeated types of injury to the brain"; "it was our final conclusion that this was a sign of external injury, external trauma imposed upon the child over a period of weeks to months." He was "essentially blind", with "arching ... of the muscles". Dr. Goldie opined, "It was my contention and that of my colleague ... that this was indeed injuries consistent with child abuse."

Paula Sedtal, with whom appellant and the child stayed several months in 1983, saw the bruises on the boy. Appellant explained their presence because "she [appellant] whipped him because she was scared he was in a seizure at one time and she didn't know how to get him out of it." The witness had seen appellant whip the baby with a leather belt when he was five or six months old. The witness also saw appellant hit the baby in the face.

Joseph Robinson, Paula Sedtal's son, had seen appellant strike the baby. Once he heard appellant say, "[G]o ahead and choke, you little bastard," because she didn't want the child "in the first place." On one occasion he saw appellant drop the baby on purpose, and shake the baby real hard, "like trying to break his neck or his arms."

Elsie Marie Sonnier's testimony was that she had seen appellant take the baby by the arm and "threw him up towards the headboard."

"Direct evidence is evidence that, if believed, proves the existence of the fact in issue without inference or presumption. Indirect or circumstantial evidence, on the other hand, is proof of collateral facts and circumstances from which it may be concluded that the principal facts in issue existed."

*24 TEX.JUR.3d, Criminal Law sec. 3005, at 101* (1982).

■ It is not correct, in our opinion, as appellant argues, that the State's case is entirely circumstantial. But, at any rate, facts in issue in a criminal case are not required to be established by direct evidence but may be shown by circumstantial proof. *See Bailey v. State*, 532 S.W.2d 316 (Tex.Crim.App.1975). "It [circumstantial evidence] is not to be rejected, though standing alone it might not justify a verdict." *24 TEX.JUR.3d, Criminal Law sec. 3005, at 103* (1982). In addition, the facts need not exclude every hypothesis that the act was committed by someone other than the accused, " 'it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating

circumstances.'" *Davis v. State*, 630 S.W.2d 769, 771 (Tex.App.—Houston [1st Dist.] 1982, disc. rev. ref'd). Each case must be determined by its own facts and viewed in the light most favorable to the verdict. *Ysasaga v. State*, 444 S.W.2d 305, 308 (Tex.Crim.App.1969).

The facts in the case at bar are far different from those in the recent case of *Johnson v. State*, 673 S.W.2d 190 (Tex. Crim.App.1984), or *Reese v. State*, 653 S.W.2d 550 (Tex.App.—Beaumont 1983, no writ). In both of these cited cases the proof merely shows that the appellant could have committed the act. In both cases the State failed to prove beyond a reasonable doubt that the appellant was the person who committed the crime.

We have tried to carefully summarize the State's evidence in the case at bar. It does not support an inference other than the guilt of the appellant. *See Girard v. State*, 631 S.W.2d 162 (Tex.Crim.App.1982); *Carlsen v. State*, 654 S.W.2d 444 (Tex. Crim.App.1983). The verdict of the jury was not based on speculation. *Reese v. State, supra.* This ground of error is overruled.

Appellant's final ground of error urges error in the admission of Exhibit No. 1. This is a photograph of appellant with the child sitting in her lap. The child is said to have a cigarette in his mouth, which we accept as true; however, our reproduction of the photograph is far from clear. The exhibit certainly did not help appellant, but neither can we say it was inflammatory. At best, it is irrelevant. No harm is shown. This ground of error is overruled.

The judgment of the trial court is affirmed.

Affirmed.