ACCEPTED
05-14-00724-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
1/15/2015 5:03:21 PM
LISA MATZ
CLERK

IN THE COURT OF APPEALS FOR
THE FIFTH COURT OF APPEALS DISTRICT
DALLAS, TEXAS

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
1/15/2015 5:03:21 PM
LISA MATZ
Clerk

| | | |
|---|---|---|
| **ROBERT KIMBLE,** | § | |
| *APPELLANT* | § | |
| | § | |
| | § | |
| | § | **NO.      05-14-00724-CR** |
| **V.** | § | |
| | § | |
| | § | |
| **THE STATE OF TEXAS,** | § | |
| *APPELLEE* | § | |

*APPEALED FROM CAUSE NUMBER F13-55104 IN THE 283ʳᵈ JUDICIAL DISTRICT COURT OF DALLAS COUNTY, TEXAS; THE HONORABLE RICK MAGNIS, JUDGE PRESIDING.*

§ § §

# STATE'S RESPONSE BRIEF

§ § §

SUSAN HAWK
Criminal District Attorney
Dallas County, Texas

MICHAEL R. CASILLAS, Assistant
Criminal District Attorney
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3600
FAX (214) 653-3643
State Bar No. 03967500

The privilege of presenting oral argument is respectfully not requested.

**TABLE OF CONTENTS**

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

SUMMARY OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF STATE'S RESPONSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATE'S REPLY TO APPELLANT'S
SOLE POINT OF ERROR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

> *Review of the record below in accord with the applicable standard for assessing a claim of legal sufficiency reveals the presence therein of legally sufficient evidence in support of not only the jury's verdict that Appellant was guilty of the offense charged, but also that Appellant had used or exhibited a deadly weapon. Accordingly, the record herein is not one upon which this Court could base a conclusion that Appellant's conviction was irrational or unsupported by the evidence.*

LEGAL AUTHORITY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

APPLICATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

CONCLUSION AND PRAYER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

CERTIFICATE OF SERVICE AND COMPLIANCE . . . . . . . . . . . . . . . . . . . . . 16

# INDEX OF AUTHORITIES

**CASES**            **PAGES**

Adame v. State, 69 S.W.3d 581 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . 12,13

Allen v. State, 533 S.W.2d 352
        (Tex. Crim. App. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Alvarado v. State, 912 S.W.2d 199
        (Tex. Crim. App. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Baltazar v. State, 331 S.W.3d 6 (Tex.
        App. – Amarillo 2010, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . 9,10,11,13

Bethel v. State, 842 S.W.2d 804 (Tex.
        App. – Houston [1st Dist.] 1992, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bignall v. State, 887 S.W.2d 21 (Tex. Crim. App. 1994) . . . . . . . . . . . . . . . . . . . 13

Brooks v. State, 323 S.W.3d 893 (Tex.
        Crim. App. 2010)(plurality op.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,6n,7,14

Bui v. State, 964 S.W.2d 335 (Tex.
        App. – Texarkana 1998, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Burden v. State, 55 S.W.3d 608 (Tex. Crim. App. 2001) . . . . . . . . . . . . . . . . . . . . 8

Daniels v. State, No. 05-97-00715-CR, 1998 Tex. App.
        LEXIS 7520 (Tex. App. – Dallas December
        4, 1998, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . 10

Denham v. State, 574 S.W.2d 129 (Tex. Crim. App. 1978) . . . . . . . . . . . . . . . . . . 10

Ex Parte Elizondo, 947 S.W.2d 202 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . 7

Francis v. State,  No. 07-12-0044-CR, 2012 Tex. App.
    LEXIS 9847 (Tex. App. – Amarillo November
    29, 2012, pet. ref'd)(not designated for publication) . . . . . . . . . . . . . . . . 10,14

Goss v. State, No. 05-05-00463-CR, 2006 Tex. App.
    LEXIS 2747 (Tex. App. – Dallas April 6, 2006,
    no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Hernandez v. State, No. 05-04-01686-CR, 2005 Tex.
    App. LEXIS 10076 (Tex. App. – Dallas December
    5, 2005, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . 9,12

Hill v. State, 913 S.W.2d 581 (Tex. Crim. App. 1996) . . . . . . . . . . . . . . . . . . . 10

Jackson v. Virginia, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . . 6,7,12

James v. State, Nos. 05-08-01332– 33-CR, 2010 Tex.
    App. LEXIS 4671 (Tex. App. – Dallas June 22,
    2010, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . . . 10,11

Jaramillo v. State, No. 07-08-0148, 2009 Tex. App.
    LEXIS 1781 (Tex. App.  – Amarillo March
    13, 2009, no pet.)(not designated for publication) . . . . . . . . . . . . . . . . . . . . 9,10

Johnson v. State, 871 S.W.2d 183 (Tex. Crim.
    App.  1993), *cert. denied*, 511 U.S. 1046 (1994) . . . . . . . . . . . . . . . . . . . . . 8

Judd v. State, 923 S.W.2d 135 (Tex.
    App. – Fort Worth 1996, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Kutzner v. State, 994 S.W.2d 180
    (Tex. Crim. App. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lane v. State, 151 S.W.3d 188 (Tex. Crim. App. 2004) . . . . . . . . . . . . . . . . . . 11

Ledbetter v. State, No. 05-09-01313-CR, 2012 Tex.
  App. LEXIS 6697 (Tex. App. – Dallas August
  10, 2012, pet. ref'd)(not designated for publication) . . . . . . . . . . . . . . . . . . . 8

Matson v. State, 819 S.W.2d 839
  (Tex. Crim. App. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,13,14

Moore v. State, 531 S.W.2d 140 (Tex. Crim. App. 1976) . . . . . . . . . . . . . . . . . . . 8

Moreno v. State, 755 S.W.2d 866
  (Tex. Crim. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Mosley v. State, 983 S.W.2d 249 (Tex. Crim. App.
  1998), *cert. denied*, 526 U.S. 1070 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Ortiz v. State, 93 S.W.3d 79 (Tex. Crim. App. 2002) . . . . . . . . . . . . . . . . . . . . . 12

Quincy v. State, 304 S.W.3d 489 (Tex.
  App. – Amarillo 2009, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Rojas v. State, No. 14-13-00628-CR, 2014 Tex. App.
  LEXIS 9687 (Tex. App. – Houston [14th Dist.]
  August 28, 2014, pet. ref'd)(not designated for publication) . . . . . . . . . . . 12

Trahan v. State, 682 S.W.2d 597 (Tex. App. –
  Beaumont 1984, pet. ref'd, untimely filed) . . . . . . . . . . . . . . . . . . . . . . . . 8

Tucker v. State, 274 S.W.3d 688 (Tex. Crim. App. 2008) . . . . . . . . . . . . . . . . . 11,13

Turner v. State, 664 S.W.2d 860 (Tex. Crim. App. 1983) . . . . . . . . . . . . . . . . . . . 9

Upton v. State, 853 S.W.2d 548
  (Tex. Crim. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,13

Victor v. State, 874 S.W.2d 748 (Tex. App. –
  Houston [1st Dist.] 1994, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**<u>ARTICLES, CODES, RULES, and CONSTITUTIONS</u>:**

Tex. Pen. Code §1.07(a)(17)(B) ..................................... 9

TO THE HONORABLE COURT OF APPEALS:

The instant brief in response to the brief of Appellant, Robert Kimble, is filed on behalf of Susan Hawk, the Criminal District Attorney of Dallas County, Texas.

## SUMMARY OF THE CASE

Appellant was charged by indictment with having committed aggravated assault with a deadly weapon. (CR: 8). The indictment alleged that Appellant had used either his hand, a pipe, or a tree branch as a deadly weapon in the commission of the assault and similar language regarding all three possible deadly weapons appeared in the jury charge. (CR: 8, 46). While Appellant pled not guilty to the offense charged, the jury convicted Appellant of the offense charged. (CR: 5-7, 50-52; RR-3: 1-12, 167). While Appellant denied the truth of the State's enhancement allegation, the trial court found the allegation true and sentenced Appellant to imprisonment for a period of 25 years. (CR: 5-7, 51-53; RR-4: 42-43).

## STATEMENT OF FACTS

Appellant and Davida Wesley had been in a dating relationship for a period of approximately 3 months on the date of April 21, 2013. (RR-3: 13-16, 58-59). After spending some time at a party at the apartment of a man identified in the record only as "Thomas," Wesley and Appellant exited the apartment of Thomas. (RR-3: 16-17, 20-21, 24-26). After having exited the apartment of Thomas, Wesley reached her hand

1

back to take hold of Appellant's hand, only to feel Appellant's fist hit her across her face. (RR-3: 25-26).

According to Wesley, the next thing she knew, Appellant "grabbed [her] and he just started wailing [on her]." (RR-3: 25). Wesley established that Appellant just kept hitting her and even "started doing upper cuts." (RR-3: 26). Wesley explained that Appellant had first hit her in her face and then in the side of her head and had also repeatedly hit her in her face. (RR-3: 26). According to the first officer on the scene, Wesley had claimed that Appellant had used only his hands to inflict the injuries that Wesley suffered. (RR-3: 121). The first officer and the investigating detective were in agreement regarding how a person's hands or fists could constitute deadly weapons. (RR-3: 127-28, 138).

Wesley recalled that the only time Appellant stopped beating her was when she had "blacked out," which had lasted only "for a second." (RR-3: 28). While Wesley admitted that she had told the paramedics that she had never lost consciousness, Wesley had told the investigating detective about how she had lost consciousness during Appellant's attack. (RR-3: 45, 67, 144, 146). Wesley made clear that Appellant's blows had caused pain. (RR-3: 56-58).

Wesley established that Appellant had also hit her with what she thought was either a tree branch or a pipe that had been part of a barbeque grill. (RR-3: 28-29, 77).

2

Wesley admitted that her daughter, who returned to the scene of the crime later and took pictures of the remains of a barbeque grill, was the person who had stated that Wesley might have been struck with a pipe during the attack. (RR-3: 88). The first officer on the scene and the investigating detective agreed that a branch and a pipe could both be deadly weapons. (RR-3: 128-29, 137-38).

At some point, Appellant threw Wesley to the ground and fled the scene of the crime. (RR-3: 29-30, 50, 86-87). Wesley testified that, 2 days after having been attacked, she looked like a "monster." (RR-3: 33). Wesley also testified that the pictures that were admitted as State's Exhibits 3 through 8 depicted how her face had looked in the immediate aftermath of Appellant's assaultive acts. (RR-3: 32-34, 40). Wesley explained that all the swelling that was depicted in State's Exhibits 3 through 8 had been the result of Appellant's blows to her body. (RR-3: 36). Wesley showed the jurors the knots on her head that were depicted in the photographs. (RR-3: 35-36).

Wesley noted that almost a year had elapsed between the time she had been assaulted and the time she was testifying. (RR-3: 76). Wesley explained that there were times during the night that her jaw would involuntarily shiver. (RR-3: 56). Similarly, Wesley explained that her arm had never been the same since the time of the assault and that her teeth had rattled in her mouth for a long time after the assault had been committed. (RR-3: 56). Wesley informed the jury that she had wondered during

3

the assault if Appellant was going to take her life. (RR-3: 27). Wesley also informed the jury that she had asked herself how she could have been in a situation where she could have almost died. (RR-3: 88).

## SUMMARY OF  STATE'S  RESPONSES

**State's Reply to Appellant's Sole Point of Error:**

*Review of the record below in accord with the applicable standard for assessing a claim of legal sufficiency reveals the presence therein of legally sufficient evidence in support of not only the jury's verdict that Appellant was guilty of the offense charged, but also that Appellant had used or exhibited a deadly weapon. Accordingly, the record herein is not one upon which this Court could base a conclusion that Appellant's conviction was irrational or unsupported by the evidence.*

4

## STATE'S REPLY TO APPELLANT'S
## SOLE POINT OF ERROR:

**Appellant's contentions:**

In his sole point of error, Appellant contends that the evidence presented at trial was insufficient to support his conviction for the offense charged. (Appellant's Brief at pp. iii, 2, 9, 12-17). Specifically, Appellant contends that the evidence is insufficient regarding the State's deadly weapon allegation. (Id.).

**State's responses:**

Review of the record below in accord with the applicable standard for assessing a claim of legal sufficiency reveals the presence therein of legally sufficient evidence in support of not only the jury's verdict that Appellant was guilty of the offense charged, but also that Appellant had used or exhibited a deadly weapon. Accordingly, the record herein is not one upon which this Court could base a conclusion that Appellant's conviction was irrational or unsupported by the evidence.

## LEGAL AUTHORITY

In reviewing the legal sufficiency of the evidence to support a conviction, the appellate court must view the evidence in the light most favorable to the verdict and may reverse the conviction only if that review reveals that **no** rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See*

Jackson v. Virginia, 443 U.S. 307, 319 (1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1995). The appellate court, however, is not to disregard, realign or weigh evidence because the fact finder – whose exclusive realm includes the reconciliation of any evidentiary conflicts – has already engaged in such exercises. *See* Mosley v. State, 983 S.W.2d 249, 254-55 (Tex. Crim. App. 1998), *cert. denied*, 526 U.S. 1070 (1999); Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988).

While appellate courts formerly had the power to conduct a factual sufficiency review under a different standard, the Court of Criminal Appeals recently made it transparently clear that, "[T]he Jackson v. Virginia standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." Brooks v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010)(plurality op.).[1] The Brooks court explained the proper application of the Jackson v. Virginia standard by writing that:

> Viewing the evidence "in the light most favorable to the verdict" under
> a legal-sufficiency standard means that the reviewing court is required to
> defer to the jury's credibility and weight determinations because the jury

---

[1]While the lead opinion in Brooks received a total of only four votes, Judge Womack, who did not join the lead opinion, did join the concurring opinion of Judge Cochran, which literally concluded with language stating that the time had arrived "to consign the civil-law concept of factual sufficiency review in criminal cases to the dustbin of history." Brooks, 322 S.W.3d at 926 (Cochran, J., concurring joined by Womack, J.).

is the **sole** judge of the witnesses' credibility and the weight to be given to their testimony.

Id. at 899 (emphasis in original).

The explanation of the Brooks court was in complete harmony with an earlier explanation of the proper application of the legal sufficiency standard in which the Court of Criminal Appeals had made clear that, in applying the legal sufficiency standard, the appellate court is not to concern itself with whether it believes the State's evidence or that the defense's evidence outweighs that presented by the State, as the appellate court does not "assess the credibility of the witnesses on each side." Ex Parte Elizondo, 947 S.W.2d 202, 205 (Tex. Crim. App. 1996). By requiring appellate court deference to the resolutions of the fact finder, the legal sufficiency standard accords proper respect to the fact finder's exclusive duty to resolve conflicts in the testimony, to weigh the evidence, to accept or reject any or all of the evidence presented by either side, and to draw reasonable inferences from basic facts to ultimate facts. *See* Jackson, 443 U.S. at 319; Upton v. State, 853 S.W.2d 548, 552 (Tex. Crim. App. 1993); Matson v. State, 819 S.W.2d 839, 843 (Tex. Crim. App. 1991). Finally, the appellate court may reverse the fact finder's guilty verdict based on legally insufficient evidence only if the guilty verdict is irrational or unsupported by the evidence. *See* Matson, 819 S.W.2d at 843; *see also* Brooks, 323 S.W.3d at 907.

7

This aforementioned standard applies to claims of legal insufficiency whether the evidence supporting the conviction is direct or circumstantial in nature. *See* Burden v. State, 55 S.W.3d 608, 613 (Tex. Crim. App. 2001); Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999). Additionally, "In a circumstantial evidence case, it is not necessary that every fact point directly and independently to the guilt of the accused; rather, it is enough if the conclusion [of guilt] is warranted by the combined and cumulative force of all the incriminating circumstances." Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993), *cert. denied*, 511 U.S. 1046 (1994). Finally, "Use of a deadly weapon may be proved by circumstantial evidence." Ledbetter v. State, No. 05-09-01313-CR, 2012 Tex. App. LEXIS 6697, at *7 (Tex. App. – Dallas August 10, 2012, pet. ref'd)(not designated for publication), *citing*: Moore v. State, 531 S.W.2d 140, 142 (Tex. Crim. App. 1976) and Trahan v. State, 682 S.W.2d 597, 598 (Tex. App. – Beaumont 1984, pet. ref'd, untimely filed).

**APPLICATION**

In his sole point of error, Appellant contends that the evidence presented at trial was insufficient to support his conviction for the offense charged. (Appellant's Brief at pp. iii, 2, 9, 12-17). Specifically, Appellant contends that the evidence is insufficient regarding the State's deadly weapon allegation. (Id.). The State respectfully disagrees because review of the record in the light most favorable to the

8

verdict reveals the presence therein of legally sufficient evidence in support of not only the jury's verdict that Appellant was guilty of the offense charged, but also that Appellant had used or exhibited a deadly weapon. Accordingly, the record herein is not one upon which this Court could base a conclusion that Appellant's conviction was irrational or unsupported by the evidence.

The indictment and the jury charge both alleged that Appellant had used his hand, a tree branch, and a pipe as a deadly weapon. (CR: 8, 46). While none of those aforementioned objects are a deadly weapon *per se*, any or all of them could qualify as a deadly weapon if it was shown by the evidence that in the manner of their use or intended use they were capable of causing death or serious bodily injury. *See, e.g.*, Hernandez v. State, No. 05-04-01686-CR, 2005 Tex. App. LEXIS 10076, at *3-4 (Tex. App. – Dallas December 5, 2005, no pet.)(not designated for publication), *citing*: Tex. Pen. Code §1.07(a)(17)(B) and Turner v. State, 664 S.W.2d 86, 90 (Tex. Crim. App. 1983) and Judd v. State, 923 S.W.2d 135, 140 (Tex. App. – Fort Worth 1996, pet. ref'd).

Under the law, the evidence regarding the nature of the injuries Appellant inflicted upon Wesley can provide sufficient proof of Appellant's use of a deadly weapon during the commission of the offense. *See* Baltazar v. State, 331 S.W.3d 6, 8 (Tex. App. – Amarillo 2010, pet. ref'd), *citing* Jaramillo v. State, No. 07-08-0148,

2009 Tex. App. LEXIS 1781, at *7 (Tex. App. – Amarillo March 13, 2009, no pet.)(not designated for publication).  It was not necessary, however, for the State's evidence to show that Wesley actually suffered serious bodily injury as a result of Appellant's having beaten her with his hands, the tree branch, or the pipe.  *See, e.g.*, Francis v. State,  No. 07-12-0044-CR, 2012 Tex. App. LEXIS 9847, at *3 (Tex. App. – Amarillo November 29, 2012, pet. ref'd)(not designated for publication), *citing*: Quincy v. State, 304 S.W.3d 489, 500 (Tex. App. – Amarillo 2009, no pet.) and Baltazar, 331 S.W.3d at 8; Daniels v. State, No. 05-97-00715-CR, 1998 Tex. App. LEXIS 7520, at *22-23 (Tex. App. – Dallas December 4, 1998, no pet.)(not designated for publication), *citing*: Hill v. State, 913 S.W.2d 581, 591 (Tex. Crim. App. 1996) and Bui v. State, 964 S.W.2d 335, 342 (Tex. App. – Texarkana 1998, pet. ref'd).  Additionally, any testimony from Wesley regarding what she endured and any testimony regarding how any of the weapons could have been used as a deadly weapon constituted evidence that was capable of providing legally sufficient evidence regarding Appellant's use of a deadly weapon during the commission of the offense.  *See, e.g.*, James v. State, Nos. 05-08-01332– 33-CR, 2010 Tex. App. LEXIS 4671, at *6 (Tex. App. – Dallas June 22, 2010, no pet.)(not designated for publication), *citing*: Denham v. State, 574 S.W.2d 129, 130 (Tex. Crim. App. 1978) and Bui, 964 S.W.2d at 343 and Bethel v. State, 842 S.W.2d 804, 807 (Tex. App. – Houston [1st Dist.] 1992, no

10

pet.).

The record is undisputed regarding how the first officer on the scene and the investigating detective agreed that hands and fists and a branch and a pipe could all be deadly weapons. (RR-3: 127-29, 137-38). The testimony from the trained and experienced first officer on the scene and from the investigating detective is much akin to expert testimony that supports the jury's verdict that it was beyond a reasonable doubt that Appellant had committed the offense charged and had used a deadly weapon in the commission of the offense charged. *See* Baltazar, 331 S.W.3d at 8, *citing* Tucker v. State, 274 S.W.3d 688, 692 (Tex. Crim. App. 2008).

Additionally, Wesley testified that she had "blacked out" or lost consciousness at some point during Appellant's having beaten her with his fists. (RR-3: 28). Wesley's having lost consciousness supports the jury's beyond-a-reasonable-doubt conclusions that Appellant had been guilty of the offense and had used a deadly weapon in the commission of the offense. *See, e.g.*, Lane v. State, 151 S.W.3d 188, 191 (Tex. Crim. App. 2004); Baltazar, 331 S.W.3d at 8; *see also, e.g.*, James, Nos. 05-08-01332– 33-CR, 2010 Tex. App. LEXIS 4671, at *7.

The record was also undisputed regarding how Wesley had literally feared that she was going to die at the hands of Appellant. (RR-3: 27, 88). Wesley's testimony regarding her fear that Appellant was going to kill her provides more evidence that

11

supports the jury's having concluded beyond a reasonable doubt not only that Appellant was guilty of the crime charged, but also that Appellant had used a deadly weapon in committing the crime charged. *See, e.g.*, Rojas v. State, No. 14-13-00628-CR, 2014 Tex. App. LEXIS 9687, at *5 (Tex. App. – Houston [14th Dist.] August 28, 2014, pet. ref'd)(not designated for publication), *citing* Victor v. State, 874 S.W.2d 748, 751 (Tex. App. – Houston [1st Dist.] 1994, pet. ref'd); *see also, e.g.*, Goss v. State, No. 05-05-00463-CR, 2006 Tex. App. LEXIS 2747, at *5 (Tex. App. – Dallas April 6, 2006, no pet.)(not designated for publication); Hernandez, No. 05-04-01686-CR, 2005 Tex. App. LEXIS 10076, at *5-11.

Wesley testified as well that all of the injuries depicted to her in State's Exhibits 3 through 8 had been the result of Appellant's criminal acts of beating her. (RR-3: 35-36). State's Exhibit 4 shows a bloody contusion directly below Wesley's left eye. The jurors, as sole triers of fact, were entitled to conclude beyond a reasonable doubt that Appellant had used a deadly weapon because the jurors could have inferred that the force of the blow or blows that had caused the bloody contusion would have been capable of causing serious bodily injury to the soft tissue of Wesley's eye had the blow or blows impacted Wesley's face at a level just slightly higher than where the blow or blows actually landed. *See* Jackson, 443 U.S. at 319; Ortiz v. State, 93 S.W.3d 79, 88 (Tex. Crim. App. 2002); Adame v. State, 69 S.W.3d 581, 582 (Tex. Crim. App.

12

2002); Bignall v. State, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994); Upton, 853 S.W.2d at 552; Matson, 819 S.W.2d at 843; Allen v. State, 533 S.W.2d 352, 354 (Tex. Crim. App. 1976). Furthermore, the fact that Wesley somehow managed to avoid having her eye itself actually injured by Appellant's blow or blows that caused the bloody contusion depicted in State's Exhibit 4 does not render the evidence insufficient regarding Appellant's having used an object that constituted a deadly weapon to inflict the damage reflected in State's Exhibit 4. *See* Baltazar, 331 S.W.3d at 8, *citing* Tucker, 274 S.W.3d at 692.

State's Exhibit 3 and State's Exhibit 8 both show the swelling to Wesley's face that was the result of Appellant's blow or blows. (RR-3: 35-36). Even though almost a year had passed since the time of the assault, Wesley explained to the jury how her jaw would still sometimes shiver at night. (RR-3: 56, 76).

Similarly, State's Exhibit 6 shows the welts that Appellant inflicted to Wesley's right arm. (RR-3: 35-36). A comparison of those welts with the pipes depicted in State's Exhibit 11, State's Exhibit 13, and State's Exhibit 14 reveals that those welts could well have been the result of Appellant's having beaten Wesley with at least one of the pipes (or a pipe similar to the pipes depicted).

Despite the fact that almost a year had elapsed from the time of the assault, Wesley made clear at the time of the trial that her arm had not returned to its pre-

13

assault status. (RR-3: 56, 76). The jurors – as triers of fact – were entitled to infer from Wesley's aforementioned testimony about the on-going physical consequences with which she had to contend that Appellant's acts of beating Wesley had caused the protracted loss or impairment of the function of a bodily member or organ. *See, e.g.*, Francis, No. 07-12-0044-CR, 2012 Tex. App. LEXIS 9847, at *5.

For all the aforementioned reasons, the record – when reviewed properly under the applicable standard for conducting a legal sufficiency analysis – contains evidence of a sufficient nature and quality such that neither the jury's guilty verdict in general, nor the jury's conclusion that Appellant was guilty beyond a reasonable doubt of having used a deadly weapon in the commission of the crime against Wesley can accurately be characterized as being irrational or unsupported by the evidence. *See* Matson, 819 S.W.2d at 843; *see also* Brooks, 323 S.W.3d at 907. Accordingly, Appellant's sole point of error should be overruled.

## CONCLUSION AND PRAYER

Since the record contains evidence in support of Appellant's conviction that is of a legally sufficient nature and quality relative to Appellant's having used a deadly weapon in the commission of the crime charged, the State prays that this Court will overrule Appellant's sole point of error and affirm the trial court's judgment of conviction in its entirety.

Respectfully submitted,

SUSAN HAWK,
Criminal District Attorney
Dallas County, Texas

_Michael R. Casillas_
_____
MICHAEL R. CASILLAS, Assistant
Criminal District Attorney,
Appellate Division
133 N. Riverfront Blvd., LB 19
Dallas, Texas 75207-4399
(214) 653-3600; FAX (214) 653-3643
State Bar No. 03967500

15

## CERTIFICATE OF SERVICE AND COMPLIANCE

I hereby certify that – no later than the 23rd day of January 2015 – a true copy of the instant State's Response Brief was delivered by hand to the Office of the Dallas County Public Defender and a true, electronically-formatted copy of the instant State's Response Brief has been served on Appellant's counsel, the Hon. Julie Woods, Assistant Dallas County Public Defender, 133 N. Riverfront Blvd., LB-2, Dallas, TX 75207, by use of the electronic service function that accompanies the filing of the instant State's Response Brief with this Court through the electronic filing service provider to which the State subscribes.

Additionally, I also hereby certify – based on the word-count function of the Word Perfect, word-processing software with which the instant State's Response Brief was drafted – that the instant State's Response Brief contains 3,129 words.

*Michael R. Casillas*

_____

MICHAEL R. CASILLAS

16